In re 1969-1970 County Tax Levy.
Evelyn U. Werth, and all other property owners in
the Nonhigh School Districts of Buffalo County,
Nebraska, appellee, v. Buffalo County Board of
Equalization, appellant.
188 N. W. 2d 442

Filed June 11, 1971. No. 37818.

Andrew J. McMullen, for appellant.

Wilson, Barlow & Watson and Kile W. Johnson, for appellee.

Nye, Wolf & Hove, for amicus curiae.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

CLINTON, J.

This is an appeal by the Buffalo County Board of Equalization from a judgment of the district court for Buffalo County in which the court declared that a portion of the nonresident high school tuition levy as set by the Board for the fiscal year commencing July 1, 1969, and ending June 30, 1970, was excessive and illegal and directing that refunds be made. We reverse the judgment of the trial court and direct dismissal of the petition of plaintiff-appellee.

The plaintiff, a taxpayer residing in a school district which was subject to the levy, had appealed under the provisions of sections 77-1601 and 77-1606 to 77-1610, R. R. S. 1943, from the action of the Board and asked, among other things, that section 79-4,102, R. S. Supp., 1969, be declared unconstitutional and void. The trial court found the statute constitutional. The plaintiff did not cross-appeal but does here argue unconstitutionality. This point has been decided adversely to the plaintiff in Mann v. Wayne County Board of Equalization, 186 Neb. 752, 186 N. W. 2d 729. A reading of that case will be useful in understanding the disposition made on this appeal of other questions raised.

The Board makes nine assignments of error. Two of these it does not argue and these we disregard. The remaining assignments may be condensed as follows: The court erred (1) in receiving any evidence under the plaintiff's petition because the affected receiving high school districts were necessary parties defendant and had not been joined; (2) in holding that the Board had power to change the amount determined to be the proper per pupil cost for nonresident students by the receiving high school districts; and (3) in holding that the levy made by the Board was excessive and contrary to law.

The plaintiff alleged: (1) The levy was made in reliance upon erroneous and unlawful certifications to the Board by the county superintendent of the number of applications received by the superintendent for nonresident high school privileges under section 79-4,105, R. R. S. 1943; that 225 applications had been certified but that 225 applications had not in fact been received by the superintendent prior to July 1, 1969; and that if any applications were submitted after that date they were null and void. (2) A balance on hand of $78,251.90 in the nonresident high school tuition fund on August 29, 1969, had not been deducted in determining the amount required to be raised by the levy and that the failure of the Board to make the reduction was contrary to the provision of section 79-4,104, R. R. S. 1943, as follows: "If a balance remains in the fund after all claims have been paid, it shall not revert to the county general fund but shall remain in the nonresident high school fund and be deducted from the amount levied for the succeeding year." (3) The tuition rates submitted by the school superintendent of the receiving high school districts are in excess of the actual per pupil cost and in violation of the limitations claimed to be imposed by section 79-4,102, R. S. Supp., 1969, which provides in part: "The high school tuition rate for nonresident pupils shall be determined annually by the receiving district on a uniform basis for all pupils but such rate shall in no event be less than the average per pupil cost for the preceding school year determined as provided in subsection (3) of section 79-486."

The trial court incorporated in its decree detailed computations of per pupil cost for each of the seven receiving high school districts and computed a total money requirement for the nonresident high school tuition fund for the year 1969-70 in the amount of $136,372.44. From this the court subtracted the $78,251.90 balance in the fund as of August 29, 1969, and computed the sum of $58,128.54 as the amount needed to be raised by the

levy. In determining per pupil cost, it first divided the estimated income from nonresident high school tuition as shown by the 1969-70 budgets of each of the high school districts by $1,000 (presumably the certified tuition rate), and thus arrived at the number of pupils to be received by each district. However, the record in this case is completely devoid of any evidence to establish: (1) The tuition rate certified by each district; (2) the number of nonresident pupils anticipated by each district; and (3) the total number of pupils certified by the county superintendent to the Board.

In the computation of per pupil cost under section 79-486, R. S. Supp., 1969, the court made adjustments eliminating from the costs of various high school districts the amounts received by each as State Aid and Federal Title I funds. It made this adjustment by using the anticipated amount of such aid as shown in the budgets of each of the school districts, then allocating a portion of this to high school education, and then subtracting this allocated figure from high school education costs. The record is devoid of any basis for this allocation except the relationship of the elementary and secondary education costs of each school as shown in the annual financial reports of the districts for the preceding year as they are on file in the offices of the Department of Education. The plaintiff argues that expenditures of the high school districts paid by state aid and federal funds are not part of the costs of the districts because the plaintiff and others similarly situated "pay money to the Federal Government through income taxes. The same taxpayers contribute to the State General Fund by paying state sales, use, and income taxes. When distributions to the individual high school districts are thereafter made by the United States Government, and by the State of Nebraska from the General Fund, the same taxpayers are entitled to receive the benefits of their taxing burden."

A clear understanding of the statutory plan and pur-

poses of the nonresident high school education statutes contained in sections 79-494 to 79-4,106, R. R. S. 1943, including section 79-4,102, R. S. Supp., 1969, which we will hereafter refer to as the act, is necessary to a determination of some of the issues presented.

Section 79-494, R. R. S. 1943, declares that, subject to the conditions of the act, its purpose is to secure 4 years of high school education for those children whose parents or guardians reside in a high school district which does not have a high school.

Section 79-4,100, R. R. S. 1943, is important. It grants to any high school district the right to refuse admission to any and all nonresident students if the tuition fixed by section 79-4,102, R. S. Supp., 1969, is noncompensatory, or if the pupils are from districts not served at the time of the enactment of the statute or previously; "Provided, that no public high school district may refuse admission to nonresident pupils effective prior to the beginning of the 1963-1964 school year, and effective then, or at the beginning of any school year thereafter, only if notice of its intention to refuse admission to non-resident pupils has been given . . . by October 1 of the preceding year . . . by publication in a legal newspaper . . .; and provided further, that any school district may by public notification prior to October 1 require that the parents or guardians of all nonresident pupils must make application on or before April 1 for admission to the following school term." Previous to the 1963 amendment this section of the statute simply read: "Any public high school district may refuse admission to any or all nonresident pupils."

The effect of the 1963 amendment is that the receiving school district must, if it has not brought itself within the proviso by giving the requisite notice, accept all qualified students who make application prior to the beginning of the school year. There is nothing in the record to show whether or not the receiving districts gave the notices mentioned. It therefore may be that

they are in fact required to accept students making application after July 1 and before the beginning of the school year. A student residing with his parent or guardian who moves into a nonhigh school district after July 1 would, in the light of the clearly expressed legislative purpose, certainly be entitled to the benefit of the act.

Section 79-4,102, as amended by the 1969 Legislature, requires the county superintendent of each county in which there is no county high school, within 30 days of the annual meeting—in nonhigh school districts the annual meeting is held the second Monday in June—to "certify to the county board of supervisors or commissioners the number of qualified pupils whose parents or guardians have applied to the county superintendent for nonresident high school tuition privileges and a list of the school districts which have been approved . . . as schools qualified to grant nonresident public high school education . . .." It is apparent that the purpose of this section is to give the county board of equalization a basis for determining the levy.

Sections 79-4,103 and 79-4,104, R. R. S. 1943, make provisions for payment of tuition to the receiving districts and provide that if funds are insufficient, pro rata payments are to be made. The secretary of the high school district may certify both semesters together if for some reason he fails to certify for the first semester. Section 79-4,104, R. R. S. 1943, provides also for paying with the second semester payment any deficiency in the first semester payment, making up any deficiency for the year by levy in the following year, and, as already noted, if there is a balance of funds on hand it is to be deductible from the levy the following year.

Section 79-4,105, R. R. S. 1943, states: "The parent or guardian of any pupil desiring to take advantage of the provisions of sections 79-494 to 79-4,106 for nonresident high school education shall make application, in writing, to the county superintendent of the proper county

before July 1 each year. Such application must show
. . .": (1) The number of the district of the legal resi-
dence of the parent or guardian; (2) the number of
pupils for whom the privilege is desired; and (3) the
high school grade the pupil will enter. It is to be noted
that no requirement is made in the statute that notifi-
cation be given of the identity of the high school district
which the student will attend. The Legislature has left
this to the option of the student and his parent or
guardian.

A careful reading of the statutes above cited clearly
shows: (1) All qualified students of districts not hav-
ing a high school are entitled to nonresident high school
privileges subject to the conditions of the act. (2) The
receiving high school district makes the determination
of the per pupil cost in accordance with the statutory
standards and these costs may differ from district to
district. See Mann v. Wayne County Board of Equaliza-
tion, *supra*, p. 758. (3) The student may attend the re-
ceiving district of his choice. (4) The receiving district
is required to accept any qualified student who applies
before the beginning of the school year if it has not
brought itself within the proviso of section 79-4,100, R.
R. S. 1943, by giving the requisite notice. (5) The county
board of equalization, in order to make the requisite
levy, has the following information: The tuition rate
determined by each of the high school districts and the
total number of students who, at the time of the certifi-
cation, have indicated their intention to avail them-
selves of the privilege. It is apparent that since the
county board of equalization does not necessarily know
how many students will come under each rate, there
can be no way in which it can determine the precise
total amount which will be required by the fund. Be-
cause of the fact that under the statutes the high school
must receive any qualified student who applies before
the term begins, it is evident that neither can the county
board of equalization know precisely the total number

of students to be served. The county board of equalization must necessarily deal in approximations just as must the school district in determining its budget requests.

The judgment of the trial court to the effect that the total amount of tax money required is precisely the sum of the products of the number of students who attend each high school district as determined by the July 1 applications, multiplied by the per pupil costs for each district, is not supported by the statutory plan. The Legislature has not required that the information be furnished from which such an exact sum can be determined.

The foundation of the computation of the trial court of per pupil cost and the total money requirements of the nonresident high school tuition fund was its preliminary determination of the number of nonresident pupils who would be in attendance at each receiving high school district. This in turn depended upon an assumed cost certified by each district. Neither of these items appear in the record in this case. The plaintiff has the burden of proving that the school levy was in fact excessive. C.R.T. Corp. v. Board of Equalization, 172 Neb. 540, 110 N. W. 2d 194.

Section 79-4,104, as already noted, provides that if a balance remains in the fund after all claims are paid, this balance remains in the fund and must be considered by the county board of equalization in determining the levy for the succeeding year. The trial court determined that for 1969-70 the amount of $136,372.44 was the total fund need and that a balance of $78,251.90 should be deducted, leaving $58,128.54 to be raised by further taxation. The record shows the following past balances: July 1, 1969, $60,889.19; August 1, 1969, $69,147.45; and September 1, 1969, $78,251.90. The record does not show whether or not all claims against the fund were paid at the date that the levy was made. We cannot assume they were even though under the statu-

tory provisions the last payment should be made on or before July 1. Moreover, there is no evidence in the record to show which balance, if any, the Board took into consideration in making the levy. The record shows only the levy of 6.26 mills, but discloses no evidence whatever as to how it was determined or what amount of money it will raise. The amended judgment of the trial court indicates the amount for which levy was made by the Board was $164,110.81, but there is no evidentiary support for the item. It can be reached by subtracting the $60,889.19 balance from the $225,000 alleged to have been used by the Board, but there is no evidentiary support for the $225,000 figure.

We hold: (1) There is a complete failure of proof to support the determinations of the trial court. (2) The Board was required to follow the statutory mandate of deducting any balance in the fund after all claims for the preceding year have been paid, but there is no evidence from which it can be determined in this case that the statutory mandate was not followed. (3) The Board ordinarily has no authority to question those matters properly lying within the discretionary legislative powers of the school district, nor to determine, as a quasi-judicial body, the legality or illegality of the budget requirements made by a political subdivision to whom the Legislature has entrusted the legislative power. State ex rel. City of Omaha v. Lynch, 181 Neb. 810, 151 N. W. 2d 278. We can find in the nonresident high school tuition act no indication of an intention on the part of the Legislature to give the Board supervisory powers over the budget requirements of the school districts.

The correctness of the finding of the trial court that state and federal aid to the high school districts must be deducted in determining per pupil cost should be decided. This same issue was made in Mann v. Wayne County Board of Equalization, *supra,* but not decided on the grounds that the evidence did not show whether or not such items had been credited in determining per

pupil cost. There is no evidence here that the plaintiff and others in her situation have, or if they have to what extent, paid these federal and state taxes, but for purposes of this opinion we will assume plaintiff did.

Once a taxpayer has paid a valid tax he has no further interest in the proceeds save and except the same interest as every other taxpayer, namely, to see that the proceeds are used for the purpose for which they were levied. Lindgren v. School Dist. of Bridgeport, 170 Neb. 279, 290, 102 N. W. 2d 599; City of Fremont v. Dodge County, 130 Neb. 856, 266 N .W. 771. Once the tax was levied and collected by the state and federal governments and paid to the high school districts pursuant to the provisions of valid state and federal statutes, the plaintiff had no interest therein such as gave her any standing to claim any special credit therefor. The funds paid to the high school districts became the property of the districts the same as any other taxes lawfully received by them. The Legislature could provide that such amounts not be computed in determining the per pupil cost. It presumably is aware of the existence of the statutes providing state and federal aid. Yet it has made no provision for deducting state and federal aid in computing per pupil cost under section 79-486, R. S. Supp., 1969. Funds received and expended by the high school districts from state and federal aid are, until the Legislature otherwise decrees, part of the per pupil cost.

We do not decide whether an appeal under section 77-1606, R. R. S. 1943, may be taken as a class action.

We next note the Board's assignment of error of absence of necessary parties, viz, the receiving high school districts. These districts must obtain payment of their tuition charges from the fund. If it is insufficient they cannot be paid in full but only pro rata. The rights of these districts are therefore affected for a determination has been made by the trial court that the per pupil costs, which were presumably certified to the county

superintendent, are excessive and to that extent illegal. They could never regain these funds for the judgment of the court, if final and binding, would preclude it. No deficiency would exist for which levy could be made the following year as the statute earlier cited contemplates in the case of a lawful deficiency. We hold that the absent high school districts are necessary parties. § 25-323, R. R. S. 1943; Local Union v. Western Public Service Co., 140 Neb. 186, 299 N. W. 531; Burke Lumber & Coal Co. v. Anderson, 162 Neb. 551, 76 N. W. 2d 630; Cunningham v. Brewer, 144 Neb. 218, 16 N. W. 2d 533; Stevens v. Loomis, 334 F. 2d 775.

In the cases which have previously been before this court in similar matters, including those inaugurated under sections 77-1601 and 77-1606 to 77-1610, R. R. S. 1943, the affected school districts or other municipal subdivisions have been joined as parties. See, State ex rel. City of Omaha v. Lynch, *supra*; C.R.T. Corp. v. Board of Equalization, *supra;* Mann v. Wayne County Board of Equalization, *supra*.

It may possibly be urged that if necessary parties are absent, then it is not logical for this court to decide the case on the merits and that it should therefore only reverse and remand with directions to bring in the necessary parties. Such course under the circumstances here would only multiply litigation. We point out that the reversal and dismissal of the plaintiff's petition does not adversely affect the rights of the absent parties. It merely restores the situation to what it was prior to the commencement of this action. On the other hand, the plaintiff has had her day in court and as to her there has been due process.

REVERSED AND DISMISSED.