[648 NYS2d 81]

In the Matter of COMMUNITY SCHOOL BOARD NINE et al., Respondents, v RUDOLPH F. CREW, as Chancellor of the Board of Education of the City of New York, et al., Appellants, et al., Respondent.

In the Matter of COMMUNITY SCHOOL BOARD NINE et al., Respondents, v RUDOLPH F. CREW, as Chancellor of the Board of Education of the City of New York, et al., Appellants.

In the Matter of COMMUNITY SCHOOL BOARD SEVEN et al., Respondents, v RUDOLPH F. CREW, as Chancellor of the Board of Education of the City of New York, Appellant, et al., Respondent.

First Department, October 10, 1996

## APPEARANCES OF COUNSEL

*Stephen J. McGrath* of counsel *(Peter D. Winebrake* and *Ellen Ravitch* on the brief; *Paul A. Crotty, Corporation Counsel* of New York City, attorney), for appellants.

*Dominick A. Fusco* for Community School Board Nine and others, respondents.

*Jayne F. Monahan* of counsel *(Philip Kaplan* on the brief; *Levy, Gutman, Goldberg & Kaplan,* attorneys), for Community School Board Seven and others, respondents.

## OPINION OF THE COURT

WILLIAMS, J.

These appeals arise from three CPLR article 78 determinations which reviewed three administrative orders issued by Rudolph F. Crew, Chancellor of the Board of Education of the City of New York (the Chancellor), with regard to School Districts Seven and Nine located in The Bronx.

An "investigative report", which alleged that in School Districts Seven and Nine it was mandatory that persons seeking to obtain or retain supervisory positions buy and sell tickets for and attend so-called "fundraising" functions benefitting Community School Board members, aired on WCBS television on the evening of February 11, 1996. The next morning, the Chancellor's office called the District Seven District Superintendent and eventually set up an 11:00 A.M. meeting between

the Community School Board Seven (CSB 7) members and the Chancellor. Due to the short notice, only two board members were able to attend. Other board members, upon learning of the meeting, called seeking the opportunity to address the allegations raised in the telecast. Their request for an alternate date to meet with the Chancellor was never granted.

The primary topic at the meeting was the telecast, although the Chancellor expressed concern over the district's poor academic performance. After the meeting, between 1:00 and 2:00 P.M., security guards evicted the board members from their district offices at the direction of the Chancellor. Later that afternoon, the Chancellor issued a letter to Luis Perez, the President of CSB 7 and one of the members who attended the meeting, suspending the board and setting forth his reasons for so doing.

Subsequently, an article 78 proceeding was instituted by seven of the nine members of CSB 7 seeking to vacate the Chancellor's order on the ground that he had exceeded his authority by suspending the board. The Chancellor cross-moved to dismiss the petition on the ground that the petitioners had failed to exhaust their administrative remedies provided under the Education Law. In a decision dated April 22, 1996, Bronx Supreme Court Justice Douglas E. McKeon granted the petition and vacated the Chancellor's order of suspension of February 12, 1996 and reinstated the board. The Chancellor's cross motion was denied.

Also on February 12, 1996, the Chancellor suspended Community School Board Nine (CSB 9) in a letter/order of suspension addressed to Carmelo Saez, the President of CSB 9.

Shortly thereafter, CSB 9 and six of its members commenced an article 78 proceeding seeking to vacate the Chancellor's order. The Chancellor cross-moved for dismissal of the petition on the grounds that the petitioners failed to exhaust their administrative remedies pursuant to the Education Law. In a decision dated April 30, 1996, the Supreme Court, Bronx County (Jerry Crispino, J.), granted the petition and reinstated the board, while denying the Chancellor's cross motion for dismissal.

During the pendency of the article 78 proceeding before Justice Crispino, Edward F. Stancik, the Special Commissioner of Investigation for the New York City School District, issued a preliminary report titled "Corruption in Community School District 9" which set out allegations that Carmelo Saez, the aforementioned board President, had committed numerous il-

legal or unethical acts relating to political fundraising, personal use of funds raised by donations to a not-for-profit organization, use of district personnel and resources for personal needs, and other acts constituting conflict of interest. The court was made aware of this report, but the respondent Chancellor made no effort to utilize the report in the article 78 proceeding, relying instead solely upon the allegations made in the suspension order.

Consequently, Justice Crispino granted the petition and reinstated the board. The Chancellor filed a notice of appeal from Justice Crispino's order and that order was automatically stayed pursuant to CPLR 5519 (a) (1). Petitioner's motion to vacate the automatic stay was granted by this Court on May 14, 1996 unless respondent's appeal was perfected for the September 1996 term. As a result, CSB 9 remained suspended pursuant to the Chancellor's February 12, 1996 order.

On April 22, 1996, the Chancellor provided each member of CSB 9 with a copy of the Stancik report along with a letter conveying his concern about the report's findings. The letter further stated that he would afford each board member the opportunity to respond to the report before he decided on a course of action, that a meeting be set for April 25, 1996, and that submission of written responses to the report would be allowed. Six board members attended the meeting along with the board's counsel. One board member made a written submission prior to the meeting, and Mr. Saez and the board's counsel made written responses thereafter. In a follow-up letter to each board member, the Chancellor offered to meet with them again on May 6, 1996. Two board members attended that meeting.

By letter dated May 15, 1996, the Chancellor removed Mr. Saez from his position as a board member and continued the suspensions of the remaining eight board members. Shortly thereafter, CSB 9, the same six board members, and a "parent voter" commenced another article 78 proceeding challenging the Chancellor's orders of May 15, 1996. The petition alleged, *inter alia*, that the Chancellor's actions were barred by the res judicata effect of Justice Crispino's decision; that the Chancellor had ignored once again Education Law § 2590-*l*; that the Chancellor ignored significant improvements in the school district made by CSB 9; that Saez successfully refuted the al-

legations of the Stancik report; and that the Chancellor's action violated the Voting Rights Act.*

The Chancellor argued in response that the court's review of his conduct is limited to a determination of whether his actions were arbitrary and capricious and that the Stancik report could not have been submitted before Justice Crispino since he had yet to formally act upon it.

The Supreme Court, Bronx County (Joseph N. Giamboi, J.), in a decision dated July 3, 1996, granted the petition to the extent of vacating the Chancellor's orders dated May 15, 1996, which suspended the board and eight of its members and removed Carmelo Saez as a member and President.

At the outset, we find that the first CSB 9 appeal, the one heard in Trial Term by Justice Crispino, was rendered moot by the Chancellor's subsequent May 15, 1996 removal of Mr. Saez and resuspension of the other board members, and consequently, is dismissed.

As to the two remaining matters, in the opinion of this Court, our review need go no further than the threshold issue of whether the Bronx Supreme Court properly exercised jurisdiction in these proceedings. In our view, the respondent Chancellor correctly asserts that the Bronx Supreme Court Trial Terms erred in concluding that petitioners were not required to exhaust their administrative remedies prior to initiating these court proceedings.

CPLR 7801 (1) embodies the long-standing administrative law doctrine that a petitioner must exhaust his administrative remedies prior to seeking judicial relief. In the matters before us, such administrative remedies exist pursuant to Education Law § 2590-*l* (2) and related regulations (*see*, 8 NYCRR 113.1 *et seq.*).

There are exceptions to the exhaustion doctrine where, as here, the judicial remedy sought is in the nature of a writ of mandamus to review, i.e., judicial review of an administrative

---

* The Voting Rights Act issue is not before this Court. On August 23, 1996, a three-Judge panel in the Eastern District of New York dismissed as moot the voting rights claim raised herein, since it found that the Chancellor had obtained preclearance from the United States Attorney General for his actions. That claim challenged the Chancellor's actions in removing and/or suspending these elected officials as a denial or abridgment of Bronx voters' voting rights, especially in light of two recently passed State statutes which affect the reelection or reappointment of school boards or board members who have been removed, suspended, or superseded. The sole issue before this Court is the propriety of the Chancellor's orders of removal and suspension in the first instance.

determination involving the exercise of discretion. Those exceptions are: where pursuit of the administrative remedy reasonably appears to be futile; where irreparable harm may occur in the absence of prompt judicial intervention; and where "an agency's action is challenged as either unconstitutional or wholly beyond its grant of power" (*Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 57; *Matter of Caso v New York State Pub. High School Athletic Assn.*, 78 AD2d 41, 45-46). Application of these exceptions lies in the court's discretion (Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C7801:7, at 44).

However, as to questions regarding the operation of the public school system, there is considerable authority for the proposition that the "courts of this State may not substitute their judgment * * * for the professional judgment of educators and government officials actually engaged in the complex and often delicate process of educating the many thousands of children in our schools" (*Hoffman v Board of Educ.*, 49 NY2d 121, 125-126; *Donohue v Copiague Union Free School Dist.*, 47 NY2d 440, 444-445; *James v Board of Educ.*, 42 NY2d 357, 366; *Bullock v Cooley*, 225 NY 566, 576-577; *Matter of Ferrer v Quinones*, 132 AD2d 277, 283-285). In fact, it has been held that judicial intervention in the administration of the public school system should be limited to exceptional circumstances involving " 'gross violations of defined public policy' " (*Donohue v Copiague Union Free School Dist.*, *supra*, at 445, quoting *Matter of New York City School Bds. Assn. v Board of Educ.*, 39 NY2d 111, 121).

In these matters before us, the remedies sought by way of CPLR article 78 exist within the administrative review process, and that process has routinely entertained community school boards' claims that a chancellor has wrongfully removed or suspended them from office (*see, e.g., Appeal of Palermo*, 32 Ed Dept Rep 423; *Appeal of Gebert*, 30 Ed Dept Rep 414; *Matter of Boards of Educ. of Community School Dists. 25 & 26*, 23 Ed Dept Rep 298; *Matter of Alston*, 19 Ed Dept Rep 115).

The Bronx Supreme Court's assumption of jurisdiction here, on the ground that the Chancellor's actions exceeded his statutory grant of power pursuant to Education Law § 2590-*l*, undermines the administrative review provisions of the Education Law. Such reasoning would allow the ultra vires exception to the exhaustion requirement to supersede the legislative scheme, since section 2590-*l*, which defines the Chancellor's suspension powers, is usually the focus of analysis with regard

to the propriety of a community school board's suspension. By virtue of establishing an extensive administrative appeal procedure, the Legislature clearly intended that these controversies be addressed within that arena.

In concluding, we note that each of these article 78 proceedings was commenced well within the 15-day limitations period for filing an administrative appeal. We also cannot help but note the disturbing allegations raised here, especially those concerning the President of CSB 9.

Accordingly, the order of Supreme Court, Bronx County (Douglas McKeon, J.), entered April 23, 1996, which, *inter alia*, granted the CPLR article 78 petition to vacate respondent Chancellor's February 12, 1996 order of suspension of Community School Board Seven and reinstated the board, is unanimously reversed, on the law, without costs, and the petition dismissed; order, same court (Joseph Giamboi, J.), entered July 8, 1996, which granted the CPLR article 78 petition to vacate the Chancellor's May 15, 1996 orders resuspending Community School Board Nine and removing Carmelo Saez as member and President, is unanimously reversed, on the law, without costs, and the petition dismissed. The Clerk is directed to enter judgment dismissing the petitions. The appeal from the order, same court (Jerry Crispino, J.), entered April 30, 1996, which, *inter alia*, granted the CPLR article 78 petition to vacate the Chancellor's February 12, 1996 order of suspension of Community School Board Nine and reinstated the board, is unanimously dismissed as moot, without costs.

Sullivan, J. P., Milonas, Rubin and Mazzarelli, JJ., concur.

Order, Supreme Court, Bronx County, entered April 23, 1996, and order, same court, entered July 8, 1996, unanimously reversed, on the law, without costs, and the petitions dismissed; appeal from order, same court, entered April 30, 1996, unanimously dismissed as moot, without costs.