STEVE VACCARO ET AL., APPELLEES, V.
CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLANT.

573 N.W. 2d 798

Filed January 20, 1998.   No. A-96-1019.

Sheri E. Cotton for appellant.

Thomas F. Dowd, of Dowd & Dowd, for appellees.

MILLER-LERMAN, Chief Judge, and IRWIN and MUES, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Steve Vaccaro, Leland Drum, and Henry Brooks initiated proceedings in the district court for Douglas County on December 29, 1995. They sought an injunction requiring the City of Omaha (City) to promote them to the position of detention center supervisor. They alleged that the manner by which the City had filled three detention center supervisor positions was contrary to law. At trial, the plaintiffs changed the relief that they requested. They sought to have the selection process for the positions reopened and to have the hiring department, here the police division, conduct the interviews anew in accordance with the law. The district court granted this injunctive relief.

Following the denial of its motion for new trial, the City appealed the order of the district court directing it to "[reinterview] under guidelines dictated by the Personnel Department" all qualified candidates on the October 16, 1995, eligibility list for the three detention center supervisor positions. The court's order also directed that the interviewers should be the personnel director or "some one she appoints from her department" and "two police officers . . . appointed by Chief Skinner." On appeal, the City contends that the plaintiffs lacked standing to bring the suit, that the plaintiffs did not prove the elements necessary for injunctive relief, that the district court's findings were not supported by the record, and that the district court's order did not comply with statutory requirements.

For the reasons stated below, we reverse, and dismiss.

## II. FACTUAL BACKGROUND

Prior to January 1, 1996, Vaccaro, Drum, Ruth Herndon, Petra Young, and Laura Kinkaid each held the position of detention technician II in the Omaha Police Division's detention unit. Brooks was a detention technician I. In 1994, the police division decided to reorganize the management and nonmanagement personnel at the detention unit. Initially, the police division created three detention center supervisor positions as a middle-management level of personnel.

The Omaha Home Rule Charter of 1956, art. VI, § 6.01, provides that city employees are to be appointed with reference

only to their merit and fitness for employment. The City's hiring process is divided into two parts: (1) the examination process, which is administered by the personnel department, by which the personnel department creates an eligibility list through the administration of an examination; and (2) the selection process, in which the hiring department determines whom it will hire from the eligibility list. Omaha Mun. Code, ch. 23, art. III, §§ 23-191 through 23-232, set forth in detail the requirements of and procedure for the examination process. The ordinances do not explicitly set forth a requirement for or a procedure to be followed during the selection process. The eligibility list provided to the hiring department by the personnel department states that the hiring department is required to interview the candidates on the list.

At the request of the police division made September 30, 1994, the personnel department developed a job classification for the position of detention center supervisor, posted a notice of examination, gave an examination, created a list of eligible names, and forwarded this list, which was dated February 7, 1995, to the police division. Frederick Power, the detention unit manager, selected three of the candidates and hired them. These three male hirees are not parties to this lawsuit. Power did not conduct any interviews prior to these hirings. As a result of these three hirings, Herndon, Young, Kinkaid, and another female candidate filed charges with the Nebraska Equal Opportunity Commission claiming that they were discriminated against because of their gender.

In 1995, the police division decided to eliminate the detention technician II positions and to create three more detention center supervisors. On September 27, 1995, Power requested that the personnel department submit candidates for the three additional detention center supervisor positions. The February 7, 1995, eligibility list created for the three original detention center supervisor positions, mentioned above, was still in effect. From this list, a new eligibility list dated October 16, 1995, was created, which contained 10 names, including the names of Herndon, Young, and Kinkaid. Brenda Smith, who was deputy chief of the administrative services bureau of the police divison, and Detention Manager Power interviewed the candidates. In

preparation for the interviews, Smith and Power prepared questions and a benchmark for scoring each question. The three candidates with the highest scores were to be hired. Herndon, Young, and Kinkaid scored the highest and were hired as detention center supervisors.

Due to the hiring of Herndon, Young, and Kinkaid to the detention center supervisor positions and the elimination of the detention technician II positions, Vaccaro is now training to be a crime lab technician and has taken a pay cut, Brooks has remained a detention technician, and Drum is employed by the City as a painter.

## III. ASSIGNMENTS OF ERROR

We summarize the errors which the City assigns and argues as follows: (1) The plaintiffs lacked standing to bring this lawsuit; (2) the plaintiffs failed to prove irreparable harm, as required for injunctive relief; (3) the district court's findings and decision are not supported by the evidence; and (4) the district court's order of June 17, 1996, does not comply with the statutory requirements for an injunction order.

## IV. ANALYSIS

At the outset, we note that injunctive relief is an extraordinary remedy and ordinarily should not be granted except in a clear case where there is actual and substantial injury. Such a remedy should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. *Omega Chem. Co. v. United Seeds*, 252 Neb. 137, 560 N.W.2d 820 (1997); *Central Neb. Broadcasting v. Heartland Radio*, 251 Neb. 929, 560 N.W.2d 770 (1997). An injunction action is reviewed de novo on the record. *Omega Chem. Co., supra.*

### 1. DOCTRINE OF EXHAUSTION OF ADMINISTRATIVE REMEDIES

Before addressing the City's assigned errors, we must determine whether this court and the district court had jurisdiction to hear this case. See *Trew v. Trew*, 252 Neb. 555, 567 N.W.2d 284 (1997) (appellate court has power and duty to determine whether it has jurisdiction over matter before it). It is

well established that an injunction will not lie where there is an adequate remedy at law. See *Central Neb. Broadcasting, supra.* Furthermore, one must generally exhaust any available administrative remedies before one can seek judicial review. This notion is premised on the doctrine of separation of powers. See, e.g., *Local 512 v Civil Service Dep't*, 209 Mich. App. 573, 531 N.W.2d 790 (1995); *Ron Smith Trucking, Inc. v. Jackson*, 196 Ill. App. 3d 59, 552 N.E.2d 1271 (1990); *South Bend Fed. of Teachers v. Nat'l Education Ass'n*, 180 Ind. App. 299, 389 N.E.2d 23 (1979); *State v. Scearce*, 303 S.W.2d 175 (Mo. App. 1957). See, generally, 73 C.J.S. *Public Administrative Law and Procedure* § 38 (1983).

The underlying rationale for the doctrine of exhaustion of administrative remedies has been explained as follows:

" 'The rule requiring exhaustion of administrative or statutory remedies is supported by sound reasoning. The decisions of an administrative agency are often of a discretionary nature, and frequently require an expertise which the agency can bring to bear in sifting the information presented to it. The agency should be afforded the initial opportunity to exercise that discretion and to apply that expertise. Furthermore, to permit interruption for purposes of judicial intervention at various stages of the administrative process might well undermine the very efficiency which the Legislature intended to achieve in the first instance. Lastly, the courts might be called upon to decide issues which perhaps would never arise if the prescribed administrative remedies were followed.' "

*Sec., Dep't of Human Res. v. Wilson*, 286 Md. 639, 644, 409 A.2d 713, 717 (1979) (quoting *Soley v. St. Comm'n on Human Rel.*, 277 Md. 521, 356 A.2d 254 (1976)). As explained by another court, " '[t]his doctrine enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy.' " *Kelly K. v. Town of Framingham*, 36 Mass. App. 483, 486, 633 N.E.2d 414, 417 (1994) (quoting *Christopher W. v. Portsmouth School Committee*, 877 F.2d 1089 (1st Cir. 1989)).

There are exceptions to the doctrine's application. Equitable relief may be sought where a statute is attacked as unconstitutional in its entirety or where irreparable harm will be suffered from pursuit of administrative remedies or it would be futile to pursue the administrative remedies. *Ron Smith Trucking, Inc., supra.* See, generally, 73 C.J.S., *supra,* § 40. Other jurisdictions also allow judicial relief where the controversy presents only a question of law. See, *Jones v. Dallas Independent School Dist.,* 872 S.W.2d 294 (Tex. App. 1994); *Horrell v. Department of Admin.,* 861 P.2d 1194 (Colo. 1993).

Some states provide that the doctrine of exhaustion of administrative remedies is a jurisdictional requirement. In these states, a court is without jurisdiction to bestow equitable relief until a party has exhausted administrative channels. See, *Marsh v. Illinois Racing Bd.,* 685 N.E.2d 977 (Ill. App. 1997); *Medical Licensing Bd. v. Provisor,* 678 N.E.2d 814 (Ind. App. 1997); *Abington Center v. Baltimore,* 115 Md. App. 580, 694 A.2d 165 (1997); *Premium Standard Farms v. Lincoln Tp.,* 946 S.W.2d 234 (Mo. 1997); *Jansen v. Lemmon Federal Credit Union,* 562 N.W.2d 122 (S.D. 1997); *Southwest Ambulance v. Superior Court,* 187 Ariz. 290, 928 P.2d 714 (Ariz. App. 1996); *Fabec v. Beck,* 922 P.2d 330 (Colo. 1996); *Iowa Coal Min. Co. v. Monroe County,* 555 N.W.2d 418 (Iowa 1996); *Blair v Checker Cab Co,* 219 Mich. App. 667, 558 N.W.2d 439 (1996); *Community School Bd. Nine v. Crew,* 224 A.D.2d 8, 648 N.Y.S.2d 81 (1996); *Thompson v. Peterson,* 546 N.W.2d 856 (N.D. 1996); *Shumake v. Philadelphia Bd. of Educ.,* 454 Pa. Super. 556, 686 A.2d 22 (1996); *Washington v. Tyler Independent School,* 932 S.W.2d 686 (Tex. App. 1996); *Stone v. Errecart,* 675 A.2d 1322 (Vt. 1996); *McDowell v. Napolitano,* 119 N.M. 696, 895 P.2d 218 (1995); *Kelly K., supra; Flowers v. Blackbeard Sailing Club, Ltd.,* 115 N.C. App. 349, 444 S.E.2d 636 (1994); *Van Tran v. Dept. of Rev.,* 320 Or. 170, 880 P.2d 924 (1994); *Dept. Of Public Safety v. McKnight,* 623 So. 2d 249 (Miss. 1993); *State, Dep't of Taxation v. Scotsman Mfg.,* 109 Nev. 252, 849 P.2d 317 (1993); *Top Hat Liquors, Inc. v. Department of Alco. Bev. Con.,* 13 Cal. 3d 107, 529 P.2d 42, 118 Cal. Rptr. 10 (1974); *Daurelle v. Traders Federal Savings & Loan Ass'n,* 143 W. Va. 674, 104 S.E.2d 320 (1958); *Goodwin v. City of Louisville,* 309 Ky. 11, 215 S.W.2d 557 (1948).

Other states conclude that the doctrine of exhaustion of administrative remedies rests on considerations of comity and convenience and that, therefore, its application is discretionary. See, *Hammer v. N.J. Voice, Inc.*, 302 N.J. Super. 169, 694 A.2d 1080 (1996); *Rissler & McMurry Co. v. State*, 917 P.2d 1157 (Wyo. 1996); *Salvation Army v. Blue Cross & Blue Shield*, 92 Ohio App. 3d 571, 636 N.E.2d 399 (1993); *State, Etc. v. Biltmore Const. Co.*, 413 So. 2d 803 (Fla. App. 1982); *Cussimanio v. Kansas City Southern Ry. Co.*, 5 Kan. App. 2d 379, 617 P.2d 107 (1980); *State v. Wisconsin Employment Rel. Com'n*, 65 Wis. 2d 624, 223 N.W.2d 543 (1974).

The Nebraska Supreme Court has not expressly determined whether the doctrine of exhaustion of administrative remedies is a jurisdictional requirement. However, based on its holding in *Goolsby v. Anderson*, 250 Neb. 306, 549 N.W.2d 153 (1996), and other cases, the court appears to presume the doctrine is jurisdictional. See, also, e.g., *Whitehead Oil Co. v. City of Lincoln*, 245 Neb. 680, 515 N.W.2d 401 (1994). In *Goolsby, supra*, the court held that Neb. Rev. Stat. § 20-148 (Reissue 1991) (providing that person or company, but not political subdivision, who deprives another of constitutional or statutory rights is liable in civil action) allows plaintiffs to pursue their rights under the Nebraska Fair Employment Practice Act, § 48-1101 et seq. (Reissue 1988), within the judicial system, without first exhausting statutory administrative remedies. The court stated: "Without § 20-148, the [Fair Employment Practice] [A]ct's review scheme would offer the only remedy for Goolsby's civil rights claims." 250 Neb. at 313, 549 N.W.2d at 158.

We find the jurisdictional approach to be better reasoned. As stated by one court: "To leave the application of the requirement in the realm of discretion would be to depart from the rationale of the exhaustion rule." *State v. Scearce*, 303 S.W.2d 175, 180 (Mo. App. 1957). This approach is advantageous for several reasons. It promotes a uniform and orderly procedure by which litigants may enforce their rights. It ensures that claims will be heard by a body possessing expertise in the area and allows the parties to create a factual record necessary for meaningful judicial review. As a result, it prevents unwarranted inter-

ference by the judiciary in the administrative process. Finally, it avoids piecemeal application for judicial relief. We hold that before a court may exercise jurisdiction of a case, the litigant must have exhausted available administrative remedies absent the exceptions discussed above or legislation to the contrary.

### 2. APPLICATION OF DOCTRINE TO FACTS

The doctrine of exhaustion of administrative remedies applies to the case before us. Omaha Mun. Code, ch. 23, art. II, § 23-72, provides that "[t]he personnel director shall receive and consider any complaints or protests from employees or department heads concerned with the administration of the provisions of this chapter." The code provides that an employee is to take his or her grievance to the department head, and if that fails to produce an acceptable solution, it provides for an "appeal [by the employee] to the personnel director for review and submission to the personnel board." Omaha Mun. Code, ch. 23, art. II, § 23-77. The process is streamlined when an employee is "suspended, removed or reduced in classification or pay." Omaha Mun. Code, ch. 23, art. II, § 23-71. Such an employee "shall have the right to appeal to the personnel board not later than ten (10) days after receiving notice of such action." *Id.*

In the case before us, each plaintiff had available to him the administrative appeals procedure set forth above. There is nothing in the record showing that any of the plaintiffs availed themselves of this procedure. There is also nothing in the record to suggest that any of the exceptions to the application of the doctrine of the exhaustion of administrative remedies apply. Because the plaintiffs have not exhausted their administrative remedies, we conclude that this court and the district court lacked jurisdiction of this case. We also note that the administrative appeals procedure provided an adequate remedy at law.

### V. CONCLUSION

Accordingly, we reverse the judgment of the district court and dismiss the case.

REVERSED AND DISMISSED.