STEVE VACCARO ET AL., APPELLEES, V.
CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLANT.
579 N.W. 2d 535

Filed June 19, 1998.    No. S-96-1019.

Sheri E. Cotton, Assistant Omaha City Attorney, for appellant.

Thomas F. Dowd, of Dowd & Dowd, for appellees.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

The plaintiffs-appellees, Steve Vaccaro, Leland Drum, and Henry Brooks, unsuccessful applicants for newly created

employment positions, obtained from the district court a mandatory injunction requiring the defendant-appellant employer, City of Omaha, to reopen its selection process for the positions in question, as more particularly set forth hereinafter. Urging, in summary, that the evidence did not support the district court's decree either in fact or in law, the city appealed to the Nebraska Court of Appeals. That court concluded that the plaintiffs had failed to exhaust the administrative appeal process available under the city's ordinances, and consequently reversed the district court's decree and dismissed the action. *Vaccaro v. City of Omaha*, 6 Neb. App. 410, 573 N.W.2d 798 (1998). The plaintiffs thereupon successfully sought further review by this court, challenging the Court of Appeals' determination that the district court lacked jurisdiction. Although the district court did not lack jurisdiction, it erred in ruling as it did. We therefore affirm the judgment of the Court of Appeals.

## II. SCOPE OF REVIEW

An action for a mandatory injunction is in equity. *Allen v. AT&T Technologies*, 228 Neb. 503, 423 N.W.2d 424 (1988). In equity actions, an appellate court reviews the factual findings de novo on the record and reaches a conclusion independent of the findings of the trial court. *Presto-X-Company v. Beller*, 253 Neb. 55, 568 N.W.2d 235 (1997). However, as to questions of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Veskerna v. City of West Point, ante* p. 540, 578 N.W.2d 25 (1998).

## III. FACTS

The manager of the city's detention facility determined that the then-existing six detention technician II positions should be eliminated and the new position of detention supervisor be created, and asked that the city's personnel department advertise the newly available positions, test the applicants, and develop a hiring list from which candidates might be selected. At the time, Vaccaro, Drum, Petra B. Young, Laura A. Kincaid, and Ruth M. Herndon were detention technician IIs; Brooks was a detention technician I.

The personnel department established an eligibility list, which named the individuals who participated in the examina-

tion process and ranked them based on their examination scores, preliminary interview scores, and veterans' points. The list ranked, among others, Morgan L. Larson 1st; West B. Critz 2d; Drum 5th; Robert L. Stungis, Jr., 6th; Vaccaro 7th; Herndon 9th; Young 11th; Kincaid 12th; and Brooks 14th. The personnel department then forwarded a candidate list to the manager, advising that he was required to further interview the candidates listed. Without conducting any interviews, the manager selected three men, Larson, Critz, and Stungis.

After Young, Kincaid, and Herndon, all women, filed discrimination charges against the city, the manager sent a request to the personnal department, asking for a list of candidates to be interviewed to fill three additional detention supervisor positions. From those listed in the second candidate list, the manager and deputy chief, following interviews, selected Young, Kincaid, and Herndon.

As originally filed, the plaintiffs' petition prayed that the city be enjoined from appointing Young, Kincaid, and Herndon, and be ordered to appoint the plaintiffs. At the commencement of trial, the plaintiffs were permitted to orally amend their prayer to require "the [c]ity to go back and retest all eligible individuals in accordance with the requirements . . . and take into consideration . . . employment background, sick leave usage and everything else" required under the law. The plaintiffs testified that they did not question the initial examination process that resulted in the eligibility list, but challenged the propriety of the appointment process resulting in the selection of the three women.

Concluding that the plaintiffs had been subjected "to a parallel agenda" negating "their rights in regard to the interview process," the district court decreed that all qualified candidates from the second candidate list so desiring "be reinterviewed" and that such "reinterviews and reappointments, if necessary" take place within 60 days.

## IV. ANALYSIS

### 1. JURISDICTION

We begin by addressing the jurisdictional issue, noting that no generalized determination can be made concerning whether the doctrine of exhaustion of administrative remedies consti-

tutes a jurisdictional requirement. We agree with the observation in *Arkla Exploration Co. v. Texas Oil & Gas Corp.*, 734 F.2d 347 (8th Cir. 1984), that the doctrine presents a flexible concept which must be tailored to the circumstances of the particular case. As noted by the U.S. Supreme Court in *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992):

> Of "paramount importance" to any exhaustion inquiry is congressional intent. [Citation omitted.] Where Congress specifically mandates, exhaustion is required. [Citations omitted.] But where Congress has not clearly required exhaustion, sound judicial discretion governs. [Citations omitted.] Nevertheless, even in this field of judicial discretion, appropriate deference to Congress' power to prescribe the basic procedural scheme under which a claim may be heard in a federal court requires fashioning of exhaustion principles in a manner consistent with congressional intent and any applicable statutory scheme.

As a consequence, where the statute did not require the exhaustion of administrative remedies, we held such exhaustion was not a jurisdictional prerequisite to instituting legal action. *Goolsby v. Anderson*, 250 Neb. 306, 549 N.W.2d 153 (1996). On the other hand, under a statute providing that before allowing certain claims against a city, specified administrative procedures were to be followed, we held that the procedures constituted a condition precedent to filing suit. *Halbleib v. City of Omaha*, 222 Neb. 844, 388 N.W.2d 60 (1986). We have also held that a demand for action upon the responsible officers of a governmental subdivision or municipal corporation is ordinarily a condition precedent to filing a taxpayer suit for the recovery of funds on behalf of such subdivision or corporation. *Sesemann v. Howell*, 195 Neb. 798, 241 N.W.2d 119 (1976).

The plaintiffs in the instant case sought, and the district court granted, equitable relief. The city's ordinances cannot limit the district court's equity jurisdiction. See *Drennen v. Drennen*, 229 Neb. 204, 426 N.W.2d 252 (1988). However, equitable remedies are generally not available where there exists an adequate remedy at law. Thus, the question becomes whether the ordinances provide such a remedy. An adequate remedy at law

means a remedy which is plain and complete and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. *Pilot Investment Group v. Hofarth*, 250 Neb. 475, 550 N.W.2d 27 (1996); *Clayton v. Nebraska Dept. of Motor Vehicles*, 247 Neb. 49, 524 N.W.2d 562 (1994).

Omaha Mun. Code, ch. 23, art. II, § 23-72 (1980), provides: "The personnel director shall receive and consider any complaints or protests from employees or department heads concerned with the administration of the provisions of this chapter."

The code further provides that an employee is to take a grievance to the department head, and if that fails to produce an acceptable solution, the employee may appeal to the personnel director for review and submission to the personnel board. § 23-77. An employee who is suspended, removed, or reduced in classification or pay has "the right to appeal to the personnel board not later than ten (10) days after receiving notice of such action." § 23-71. Article I, § 23-1 of the code defines "grievance" as "[a] misunderstanding or disagreement between an employee and the city, as employer, arising out of a belief on the part of the employee that he is being treated unfairly in regard to the terms or conditions of his employment."

The plaintiffs' claims do not involve the terms or conditions of their employment. They are simply attacking the propriety of the selection process used to fill vacancies open to the general public. Thus, § 23-77 does not apply. Neither are the plaintiffs claiming that they were improperly suspended, removed, or reduced in classification or pay. Therefore, neither does § 23-71 apply. In short, nothing in the code provides that a candidate applying for a position open to the public may appeal an unfavorable hiring decision to the personnel board.

Consequently, the city's ordinances do not provide an adequate remedy at law, and the district court properly entertained this action. However, that determination does not end our jurisdictional inquiry, for notwithstanding that the prayer of the amended petition put the promotions won by Young, Kincaid, and Herndon at risk of being rescinded, they were not made parties to this action.

A trial court may determine any controversy between the parties before it when it can be done without prejudice to the rights

of others or by saving their rights, but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in. See Neb. Rev. Stat. § 25-323 (Reissue 1995). Because the plaintiffs' petition put Young, Kincaid, and Herndon at risk, the district court erred in not ordering them to be added as necessary parties.

When it appears that all the parties necessary to a proper and complete determination of an equity cause were not before the court, an appellate court may remand the cause for the purpose of having such parties brought in. See, *Koch v. Koch*, 226 Neb. 305, 411 N.W.2d 319 (1987); *Workman v. Workman*, 167 Neb. 857, 95 N.W.2d 186 (1959). However, an appellate court also may decide the case on the merits so long as doing so does not adversely affect the rights of the absent parties. See *Werth v. Buffalo County Board of Equalization*, 187 Neb. 119, 188 N.W.2d 442 (1971). As observed in *Werth*, when the plaintiffs have had their day in court and the reversal and dismissal of a judgment in their favor does not adversely affect the rights of the absent parties but merely restores the situation to what it was prior to the commencement of the action, it is appropriate to resolve the matter on appeal and not multiply litigation.

### 2. SUFFICIENCY OF EVIDENCE

We therefore move on to a consideration of issues presented by the city's contention that the evidence does not sustain the district court's findings and decision.

Article VI, § 6.01 of the Omaha Home Rule Charter of 1956 states: "All employes [sic] of the city shall be appointed with reference only to their qualifications and fitness for employment in the city service." Article III, § 23-191 of the code specifies:

> All regular appointments to positions in the classified service shall be made according to merit and fitness. Merit and fitness shall be ascertained insofar as practicable by examinations which shall be prepared by or under the direction of the personnel director and shall relate to those matters which will test fairly the capacity and fitness of candidates to discharge efficiently the duties of the positions for which examinations are held.

The code distinguishes between competitive examinations and promotional examinations, and the parties disagree as to

which type of examination was held. Section 23-198 provides that competitive examinations

> relate to those matters which fairly test the capacity and fitness of the persons examined to discharge the duties of the position sought by them. Examinations may be assembled or unassembled and may include written, oral, physical, or performance test, or any combination of these. Written or physical agility competitive examinations shall have a minimum pass/fail point . . . . The examinations may take into consideration such factors as education, experience, aptitude, knowledge, character, physical fitness or any other qualifications or attributes which in the judgment of the personnel director enter into the determination of the relative fitness of applicants.

Section 23-1 defines a "promotional examination" as "[a]n examination for positions in a particular class, admission to which is limited to employees in the classified service who meet the qualifications set forth in the announcement of the examination." Such examinations are described as being "of like kind and character to those for original appointment to the service. . . . In addition to other factors, promotional examinations shall take into consideration the quality and length of service where records are available to provide the basis for such rating." § 23-199. The code defines "promotion" as "[t]he movement of an employee from a position of one class to a position of another class having a higher maximum salary rate." § 23-1.

The record shows that Young, Kincaid, and Herndon were promoted. The plaintiffs argue that this is proof that the examination was a promotional one. However, whether the filling of a vacancy ultimately results in a promotion does not dictate what type of examination was held to fill the vacancy. The official posting for the examination stated that it was an "Open Competitive Examination."

The above-cited code sections regulate the examination process for which the personnel director is responsible. The fact that the plaintiffs are not challenging any part of the process that resulted in the selection of Larson, Critz, and Stungis is consistent with their contention that they are not arguing that the

examination process was flawed, only that the appointment process was flawed. However, in arguing that the city acted improperly with regard to the appointments of Young, Kincaid, and Herndon, the plaintiffs rely on the sections of the code which govern the examination process, not the appointment process.

Section 23-231 of the code requires that "[w]hen a vacancy in the classified service is to be filled . . . the department head shall submit a requisition to the personnel director." Section 23-232 provides, in part, that "[u]pon receipt of a personnel requisition, the personnel director shall certify in writing the names of available eligibles."

Section 23-272 specifies, in part, that "[a]ll original and all promotional appointments shall be tentative and subject to a probationary period of six (6) months of actual service." Thus, the appointments of Young, Kincaid, and Herndon were probationary appointments. Section 23-233 provides, in part, that "[p]robationary appointments shall be made only following certification from an open competitive or promotional list. In selecting eligibles from among those certified by the personnel director, the department head shall be permitted to examine the applications and examinations of the eligibles submitted for appointment."

Section 23-191 specifies that "[m]erit and fitness shall be ascertained insofar as practicable by examinations which shall be prepared by or under the direction of the personnel director . . . ." In generating the certified list, the personnel director considers each candidate's merit and fitness and ranks the candidates accordingly. § 23-231. As a result, the department heads know who is most qualified based on merit and fitness simply by viewing the certified list. However, nothing in the code requires department heads selecting candidates from a certified list to do so in the order ranked by the personnel director. The code merely limits department heads to selecting from the list of eligibles provided by the personnel director. Accordingly, the city is correct in urging that the evidence does not sustain the district court's decree.

## V. JUDGMENT

Although the basis of the Court of Appeals' judgment was erroneous, its reversal of the district court's decree and dis-

missal of the action were correct. We therefore affirm the judgment of the Court of Appeals.

AFFIRMED.