IN RE INTEREST OF TODD T., A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, AND DEPARTMENT OF SOCIAL SERVICES, APPELLANT, V. SAINT JOSEPH CENTER FOR MENTAL HEALTH, APPELLEE.

545 N.W.2d 711

Filed March 29, 1996. No. S-95-354.

Don Stenberg, Attorney General, Royce N. Harper, and Shawn Elliott, Special Assistant Attorney General, for appellant.

James S. Jansen, Douglas County Attorney, and John E. Huber for appellee State.

Lyman L. Larsen and Conal L. Hession, of Kennedy, Holland, DeLacy & Svoboda, for appellee Saint Joseph Center for Mental Health.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WHITE, C.J.

This appeal arises from a dispute over a hospital bill. The Nebraska Department of Social Services (DSS) contests an order of the separate juvenile court of Douglas County, Nebraska, to pay for a preadjudication evaluation at a private hospital. Because the statutory reasons by which DSS might be

held financially liable are not satisfied by the facts of this case, we reverse.

On August 29, 1994, the Douglas County Attorney filed a delinquency petition against Todd T., pursuant to Neb. Rev. Stat. § 43-247(2) (Reissue 1993), alleging that Todd was a juvenile who had committed an act that would constitute a felony in Nebraska. Specifically, the petition alleged that Todd had taken or exercised control over movable property belonging to another, and valued at $1,500 or more, with the intent to deprive that person of the property. Todd first appeared in court on September 21 for a detention hearing before Judge Douglas F. Johnson. DSS was not present, nor was its presence requested, at the detention hearing. Todd was accompanied by his parents and represented by the Douglas County public defender.

During the hearing, counsel for Todd informed the trial judge that Todd's mother had hospitalized Todd 1 month earlier at the Saint Joseph Center for Mental Health (St. Joseph's) and that Todd had attended a partial-care program at St. Joseph's following his release. Counsel for Todd asked the court to order a preadjudication examination at St. Joseph's pursuant to Neb. Rev. Stat. § 43-258 (Cum. Supp. 1994). Specifically, Todd's lawyer stated that Todd's parents had spoken with his treating physician at St. Joseph's and that the hospital would "have a bed waiting for this young man" if the court assented to the preadjudication examination.

The court hesitated to order hospitalization, stating:

> When I send a person to St. Joe's, what they're wondering about is funding. Other than you may have Medicaid, you've got to apply and you've got to get certified to get in. And I've got to be careful with the limited resources and the budget that we've got to work with.
>
> I can tell you right now with St. Joe's, I believe, not including any doctors' services, just to be there and have a space is $600 a day.

Todd's mother responded that Todd's physician had confirmed that the hospitalization would be paid by medicaid. The court then asked for a letter of confirmation from Todd's physician

and continued the hearing pending receipt of information as to the payor for Todd's hospitalization.

Todd's detention hearing resumed the next day, September 22, before Judge Samuel P. Caniglia. Again, DSS was not present and was not a party to the hearing. Counsel for Todd presented the court with a letter faxed from St. Joseph's, which letter ostensibly discussed payment for Todd's hospitalization. As neither counsel for Todd nor the Douglas County Attorney offered the letter into evidence, the letter is not part of the record in this case, and its contents are not known. The record indicates that the court read the letter and, pursuant to its representations, agreed to a preadjudication evaluation at St. Joseph's. The court's written order provided that Todd was to be taken to St. Joseph's that day and that upon Todd's release from St. Joseph's, he was to be returned to and detained at the Douglas County Youth Center. The order further provided that "the cost shall be borne by Medicaid." Todd was transported to St. Joseph's, where he remained for about 2 weeks.

Ultimately, all charges against Todd were resolved on December 27, when the trial court committed Todd to the custody of the Nebraska Department of Correctional Services for incarceration at the Youth Rehabilitation and Treatment Center in Kearney, Nebraska; the court terminated its jurisdiction with that order. DSS still had not become involved in Todd's case.

On February 17, 1995, St. Joseph's filed an application for payment, alleging that medicaid had refused payment for Todd's evaluation because the evaluation was not medically necessary. On March 6, at a hearing on the application, the juvenile court ordered DSS to pay for Todd's hospitalization, stating that "I don't think that the hospital ought to end up footing the bill for this youngster. My order . . . was entered with the idea . . . that [medicaid] covered it. If [medicaid] doesn't cover it, then I feel the matter should be paid by the Department of Social Services." Over objection by DSS, which appeared to contest the application for payment, the court ordered DSS to pay the hospital bill, stating that "[DSS is] the only other agency that has concerned — that will have any liability. I can't order anybody else to pay it."

DSS appeals from this order, assigning as error the decision of the juvenile court to order DSS to pay for the treatment of a child who was never placed in DSS' custody. Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court has an obligation to reach a conclusion independent of that of the inferior court. *Roberts v. Weber & Sons, Co.*, 248 Neb. 243, 533 N.W.2d 664 (1995). Our standard of review for this juvenile case is de novo on the record; under this standard, this court is required to reach its conclusion independent of the trial court's findings. *In re Interest of J.T.B. and H.J.T.*, 245 Neb. 624, 514 N.W.2d 635 (1994).

St. Joseph's argues that DSS must pay Todd's bill pursuant to § 43-258(4), which reads in part as follows:

> In order to encourage the use of the procedure provided in this section [preadjudication evaluations], all costs incurred during the period the juvenile is being evaluated at a state facility or institution shall be the responsibility of the state unless otherwise ordered by the court pursuant to section 43-290.

St. Joseph's contends that "state" modifies only "facility" and not "institution," and that because St. Joseph's is an institution, DSS must pay; alternatively, St. Joseph's contended at oral argument that it is, in fact, a state facility insofar as Todd was evaluated at St. Joseph's at the behest of a state actor, the juvenile court.

St. Joseph's argument that § 43-258 requires DSS to underwrite treatment at any institution, private or public, is simply wrong. Had the Legislature intended that effect, it need not have added the "state" modifier at all. Notably, the same statute refers to placing juveniles for preadjudication evaluation at "one of the facilities or institutions of the State of Nebraska." § 43-258(2).

In discerning the meaning of a statute, this court determines and gives effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Koterzina v. Copple Chevrolet, ante* p. 158, 542 N.W.2d 696 (1996). The statute requires the State to pay for services at state hospitals. St.

Joseph's is a private hospital, irrespective of its occasional interface with the state court system.

St. Joseph's also posits that the juvenile court has continuing jurisdiction over DSS. Under this theory, the court can order DSS to pay for Todd's treatment simply because in some cases DSS can be ordered to act with respect to a child irrespective of its wishes or even its participation in a court proceeding. St. Joseph's refers in particular to Neb. Rev. Stat. § 43-290 (Reissue 1993), which enumerates procedures for securing the costs of care and treatment for a juvenile. Under § 43-290, a juvenile court can order a child under its jurisdiction to receive medical, psychological, or psychiatric study or treatment. The juvenile court can order the costs of the study or treatment to be paid by the child's parent or guardian; if the child has been committed to the custody of DSS, the court can order DSS to pay for the study or treatment. *Id.*

We find that the opposite of this statutory provision must also be true: if the child has not been committed to the custody of DSS, then the court has no authority to order DSS to finance the child's study or treatment. At various times over the course of Todd's journey through the juvenile justice system, Todd was committed to the custody of the Douglas County Youth Center, St. Joseph's, his parents, and the Nebraska Department of Correctional Services at the Youth Rehabilitation and Treatment Center in Geneva, Nebraska, and the Youth Rehabilitation and Treatment Center in Kearney, Nebraska. At no point did the court commit Todd to the care and custody of DSS. None of DSS' services, such as assistance in determining a plan for Todd's care and placement, were sought by the court or by any party to this litigation, nor did DSS offer any such services.

St. Joseph's notes correctly that a juvenile court can order DSS to take custody of a child even if DSS did not participate in the placement process. See Neb. Rev. Stat. § 43-254(3) (Reissue 1993). This does not imply, however, that under § 43-290 DSS must pay for a child who was never placed in its custody.

Whether St. Joseph's, Douglas County, medicaid, Todd's parents, or some other party must assume the costs of Todd's evaluation is not in question in this appeal. We are asked only

to determine whether DSS, the appellant, should pay; we find that it should not.

REVERSED.