KATHY GOOLSBY, APPELLANT, V. PAT ANDERSON AND
ALBERTSON'S, INC., APPELLEES.

549 N.W.2d 153

Filed June 14, 1996.   No. S-94-1027.

Thomas F. Dowd, of Dowd & Dowd, for appellant.

Mark M. Schorr and Soren S. Jensen, of Erickson & Sederstrom, P.C., for appellees.

WHITE, C.J., FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

Plaintiff-appellant, Kathy Goolsby, brought this action for alleged sexual harassment she had experienced in connection with her employment at an Albertson's supermarket. In her

second amended petition, she alleged five causes of action for recovery. The district court sustained demurrers to the first, third, and fourth causes of action, which pertain to civil rights violations under the Nebraska Constitution and under the Nebraska Fair Employment Practice Act, Neb. Rev. Stat. § 48-1101 et seq. (Reissue 1988). The court subsequently dismissed these causes of action. Goolsby's second and fifth causes of action have been disposed of, and Goolsby's second amended petition has been dismissed by the district court. Goolsby now specifically appeals the district court's order dismissing the first, third, and fourth causes of action pertaining to her civil rights claims.

Goolsby assigns the following errors: (1) The district court erred in dismissing the cause of action premised on Neb. Const. art. I, § 1, and (2) the district court erred in ruling that it lacked subject matter jurisdiction under Neb. Rev. Stat. § 20-148 (Reissue 1991) to hear her causes of action pertaining to the alleged violations of the Nebraska Fair Employment Practice Act.

Goolsby filed suit in the district court seeking damages from the defendants-appellees, Pat Anderson and Albertson's, Inc., for allegedly subjecting her to "sexual harassment and a sexually polluted work environment." Goolsby filed her claim under § 20-148, which allows a person to sue a person or a company for a deprivation of rights secured by Nebraska laws.

In her original petition, Goolsby alleged that the appellees deprived Goolsby of her civil rights in the private workplace that are protected by the state Constitution and the Nebraska Fair Employment Practice Act. Specifically, Goolsby alleged that she was deprived of her rights guaranteed by Neb. Const. art. I, § 1. She also alleged violations of §§ 48-1104 and 48-1114. Goolsby also alleged intentional infliction of emotional distress as a cause of action. In response, the appellees filed a demurrer alleging that Goolsby failed to state a cause of action.

The district court sustained the appellees' demurrer. In its order, the district court found that the exclusive remedy for Goolsby's Nebraska Fair Employment Practice Act claims was through the statutory scheme set out in the act. The court

stated that under the act, a claim like Goolsby's must be first investigated by the Nebraska Equal Opportunity Commission (NEOC) and then be ruled on by an administrative judge.

The district court specifically stated, "A private cause of action exclusive of the remedies found in 48-1101 et. seq. are not contemplated by the statutes of the state of Nebraska read in pari materia." The district court concluded that it would not have jurisdiction until Goolsby exhausted her administrative remedies and appealed an order of an administrative judge rendered pursuant to § 48-1101 et seq. The court granted Goolsby 2 weeks to amend her petition.

Goolsby filed an amended petition, to which the appellees filed a demurrer. Goolsby, however, filed a second amended petition prior to the court's consideration of this demurrer. Goolsby's first cause of action in her second amended petition again alleged that she was deprived of her rights guaranteed by Neb. Const. art. I, § 1. Goolsby's second cause of action alleged intentional infliction of emotional distress.

Goolsby's third cause of action alleged that the appellees had deprived her of "her rights, privileges and immunities to be free from sexual harassment and discrimination as secured by the laws of the State of Nebraska, specifically Neb. Rev. Stat. §48-1104." Goolsby's fourth cause of action alleged that Albertson's constructive transfer of Goolsby "constitutes retaliation in violation of Neb. Rev. Stat. §48-1114." Goolsby's fifth cause of action alleged that the appellees breached the employment contract.

In response, the appellees filed a demurrer contending that the district court did not have subject matter jurisdiction and that the petition failed to state a cause of action.

The district court issued an order again sustaining the demurrers as to the first, third, and fourth causes of action. Goolsby stood on her petition, and the court dismissed her first, third, and fourth causes of action. The court, however, overruled the demurrer as to Goolsby's second and fifth causes of action.

Goolsby appealed the district court's order to the Nebraska Court of Appeals. The Court of Appeals dismissed the appeal, concluding that it lacked jurisdiction for the reason that there

had not yet been a final disposition of all causes of action pled by Goolsby. *Goolsby v. Anderson*, 3 NCA 750 (1993).

Goolsby has dismissed without prejudice the second cause of action. The district court, after presentation of evidence in a jury trial on the fifth cause of action, dismissed the same. Goolsby has not appealed the order dismissing her fifth cause of action. Rather, Goolsby only appeals the district court's order dismissing her first, third, and fourth causes of action.

Regarding this court's standard of review, a jurisdictional question does not involve a factual dispute and is resolved as a matter of law. *Dittrich v. Nebraska Dept. of Corr. Servs.*, 248 Neb. 818, 539 N.W.2d 432 (1995). When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Whitten v. Malcolm*, 249 Neb. 48, 541 N.W.2d 45 (1995).

Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *In re Estate of Soule*, 248 Neb. 878, 540 N.W.2d 118 (1995).

In construing a statute, a court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *Solar Motors v. First Nat. Bank of Chadron*, 249 Neb. 758, 545 N.W.2d 714 (1996).

In discerning the meaning of a statute, an appellate court determines and gives effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *In re Interest of Todd T.*, 249 Neb. 738, 545 N.W.2d 711 (1996). In addition, this court will, if possible, try to avoid a construction which would lead to absurd, unconscionable, or unjust results. *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993).

Moreover, to ascertain the intent of the Legislature, a court may examine the legislative history of the act in question. *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue*, 248 Neb. 518, 537 N.W.2d 312 (1995); *Georgetowne Ltd. Part. v. Geotechnical Servs.*, 230 Neb. 22, 430 N.W.2d 34 (1988).

Goolsby's first assignment of error concerning a violation under art. I, § 1, of the state Constitution was not discussed in her brief. Errors assigned but not argued will not be addressed. *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995). Therefore, we will not address this assignment of error.

We must next determine whether § 20-148, when reading the statutes of this state in pari materia, allows a claimant to bring a private cause of action in state court for violations under the Nebraska Fair Employment Practice Act before exhausting the available administrative remedies under the act. Section 20-148 provides:

> Any person or company . . . except any political subdivision, who subjects or causes to be subjected any citizen of this state . . . to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person.

This court has not explicitly addressed whether § 20-148 invokes a state district court with jurisdiction to entertain alleged Nebraska Fair Employment Practice Act violations. In *Steier v. Crosier Fathers of Hastings*, 242 Neb. 16, 492 N.W.2d 870 (1992), however, the plaintiff filed an age discrimination action under § 20-148, alleging violations of rights secured by both Nebraska's Act Prohibiting Unjust Discrimination in Employment Because of Age, Neb. Rev. Stat. § 48-1001 et seq. (Reissue 1988), and the Nebraska Fair Employment Practice Act, § 48-1101 et seq. The defendant in *Steier* did not challenge the district court's jurisdiction under § 20-148, nor did this court raise a jurisdictional challenge on its own motion.

Rather, in *Steier*, this court analyzed the plaintiff's claims as if jurisdiction was proper under § 20-148. Quoting § 20-148, this court stated, "The 'Laws of the State of Nebraska' which plaintiff alleges contain rights which she has been denied are § 48-1001 et seq. and § 48-1101 et seq." *Steier*, 242 Neb. at 18, 492 N.W.2d at 872. This court, rather

than finding a jurisdictional problem, concluded that the plaintiff could not seek relief under either act because the employer did not employ the requisite number of employees in order to make its conduct controlled by the act.

On its face, § 20-148 does not explicitly state that a plaintiff can bypass the administrative remedies set forth in the Nebraska Fair Employment Practice Act. However, § 20-148 does not explicitly prohibit a plaintiff from invoking jurisdiction under § 20-148 for violations alleged under the act. Nor do the provisions of the Nebraska Fair Employment Practice Act, § 48-1101 et seq., explicitly require that all alleged violations of the act be pursued exclusively under the administrative procedures set forth in the act.

The legislative history in this case, however, offers clear guidance as to the legislative intent behind § 20-148. The bill that would become § 20-148, 1977 Neb. Laws, L.B. 66, was introduced by State Senator Ernest Chambers. Excerpts from Senator Chambers' testimony before the Judiciary Committee reveal the purpose of the legislation:

> SENATOR CHAMBERS: [T]here is an equal opportunity commission which enforces certain rights . . . by offering a tedious, slow and cumbersome method of trying to resolve a grievance. The backlog they have now might require you to wait 18 months to [2 years] before you arrive at a resolution and the resolution of the problem then is not definitive. You have to go through a . . . reconciliation, discussion, persuasion, and if that does not work then you can have a formal hearing . . . . Well, either side can disagree, then you can go to court. This bill would make it possible if you have a grievance to go into court, initially. . . .
>
> SENATOR BARNETT: Senator Chambers, how come we need a law for this? Why can't we do that right now?
>
> SENATOR CHAMBERS: Because in some instances if you go into court on certain matters, you are told to exhaust the remedies, administrative remedies, first.
>
> . . . .

SENATOR BARNETT: And it is your feeling that [this bill] would eliminate the run around of settling these actions that you get now out of the court[?]

SENATOR CHAMBERS: Right. . . . If it does go into court, then I present all that I have on which I base the claim and then you oppose it and the court makes a decision. . . . But through the [NEOC] system you can go on for up to two years [or] longer and after all of that is completed you then might go into court anyway and start all over. By that time evidence can be old, witnesses can be gone or dead, and it becomes in a lot of cases, a paper victory, if you win it.

Judiciary Committee Hearing, L.B. 66, 86th Leg., 1st Sess. (Jan. 18, 1977).

The Judiciary Committee advanced L.B. 66 to the floor of the Legislature on a unanimous 8-0 vote. In floor debate, Senator Chambers reiterated the purpose of § 20-148:

[L.B. 66] does exactly what it says. It would allow a person with a grievance to go into court. All that [it] does is not require a person to get behind a two year backlog before having a grievance solved. If you go into court all of the issues can be presented at that time and the entire issue resolved once and for all.

Floor Debate, 86th Leg., 1st Sess. 434 (Feb. 11, 1977). Senator Warner acknowledged that NEOC had "something like a thousand or so cases backlogged two to three years." *Id.* Without additional NEOC funding from the Legislature, the caseload backlog was expected to swell to 1,400 in the coming year. L.B. 66 advanced through general and select files and was passed on final reading by a vote of 33-0.

As indicated by the legislative history of L.B. 66, it is clear that the purpose of § 20-148 is to allow plaintiffs to enforce their constitutional and statutory rights in district court without first having exhausted statutory administrative remedies. Section 20-148 was enacted to provide an alternative remedy for plaintiffs who otherwise would be trapped in bureaucratic backlogs such as the one at NEOC.

When reading the statutes of this state in pari materia, we find that a plaintiff is not precluded from bringing a private

cause of action for alleged violations under the Nebraska Fair Employment Practice Act. It is true that the Nebraska Fair Employment Practice Act in existence at the time Goolsby's cause of action arose did not explicitly provide a private cause of action to parties alleging violations under the act.

However, § 20-148 is a procedural statute which does not create any new substantive rights. Section 20-148 was enacted so that plaintiffs seeking to vindicate rights already existing under constitutional or statutory law could avoid the review procedures of agencies like NEOC. Without § 20-148, the act's review scheme would offer the only remedy for Goolsby's civil rights claims. In § 20-148, the Legislature created an alternative method for pursuing civil rights claims that are defined elsewhere in constitutional or statutory law. Absent express legislation, this court will not interpret the statutes of this state as denying a plaintiff of his or her state constitutional rights to access of the courts and to the administration of justice without delay. See Neb. Const. art. I, § 13.

Section 20-148 applies to the case at bar. The rights of workers in the private workplace to be free from sexual harassment and employer retaliation are secured by the laws of Nebraska in §§ 48-1104 and 48-1114 of the Nebraska Fair Employment Practice Act. Pursuant to § 20-148, Goolsby can pursue her claims under §§ 48-1104 and 48-1114 in state district court without first exhausting her administrative remedies under § 48-1101 et seq.

For the reasons stated above, we affirm the district court's judgment dismissing Goolsby's first cause of action set forth in her second amended petition. However, we reverse the district court's judgment dismissing Goolsby's third and fourth causes of action which alleged violations under the Nebraska Fair Employment Practice Act, and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

CAPORALE, J., participating on briefs.

CAPORALE, J., concurring.

While I concur in the majority's judgment, I write separately to lament the continued use, in interpreting a statute, of what was said on the legislative floor and characterizing those statements as the "legislative history."

Without again detailing the difference, in interpreting the meaning of an ambiguous statute, between relying on what the Legislature did as contrasted to relying on what an individual legislator or group of legislators said, as set forth in my concurrence in *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue*, 248 Neb. 518, 537 N.W.2d 312 (1995) (Fahrnbruch and Lanphier, JJ., joining), I point out that the statute in question, Neb. Rev. Stat. § 20-148 (Reissue 1991), is not ambiguous. It reads:

> (1) Any person or company, as defined in section 49-801, except any political subdivision, who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person.
>
> (2) The remedies provided by this section shall be in addition to any other remedy provided by Chapter 20, article 1, and shall not be interpreted as denying any person the right of seeking other proper remedies provided thereunder.

There is no mention therein of an exhaustion of administrative remedies. There is no mention of the Administrative Procedure Act. There is no mention of the Nebraska Fair Employment Practice Act. Section 20-148 clearly and unambiguously provides that a person or company that violates a Nebraska citizen's constitutional rights shall be liable to such person in a civil action brought by that person. A simple reading of the statute provides the answer to the question posed without resort to any legislative source, legitimate or otherwise. See, also, *Southern Neb. Rural P.P. Dist. v. Nebraska Electric*, 249

Neb. 913, 546 N.W.2d 315 (1996) (Caporale, J., concurring; Lanphier, J., joins).

The evils inherent in resorting to the statements of individual legislators when investigating the meaning of an ambiguous statute are compounded when an unambiguous statute is at issue. When the text of the statute is clear and we resort to legislative sources, we deprive legislators of the assurance that we will give ordinary terms, used in an ordinary context, a predictable meaning. *Chisom v. Roemer*, 501 U.S. 380, 111 S. Ct. 2354, 115 L. Ed. 2d 348 (1991) (Scalia, J., dissenting). Such practice also unnecessarily increases the cost of litigation by multiplying the research time necessary to litigate the meaning of a statute. W. David Slawson, *Legislative History and the Need to Bring Statutory Interpretation Under the Rule of Law*, 44 Stan. L. Rev. 383 (1992); Kenneth W. Starr, *Observations About the Use of Legislative History*, 1987 Duke L.J. 371. See, also, *Schwegmann Bros. v. Calvert Corp.*, 341 U.S. 384, 71 S. Ct. 745, 95 L. Ed. 1035 (1951) (Jackson, J., concurring).

FAHRNBRUCH and LANPHIER, JJ., join in this concurrence.