Joy SIDAK, Plaintiff,

v.

PINNACLE TELEMARKETING
LTD., Defendant.

No. 4:01CV3088.

United States District Court,
D. Nebraska.

Jan. 14, 2002.

**875**

James L. Haszard, McHenry, Haszard Law Firm, Lincoln, NE, for Plaintiff.

J. Russssell Deer, Erickson & Sederstrom Law Firm, Omaha, NE, for Defendant.

1. A final pretrial conference order was entered on December 17, 2001 (filing 33), which supersedes all previous pleadings. *See Anderson v. Genuine Parts Co.,* 128 F.3d 1267, 1271 (8th Cir.1997); Fed.R.Civ.P. 16(e).

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court on the defendant's motion for summary judgment (filing 28). Upon careful consideration of the pleadings,[1] affidavits,[2] and briefs submitted by the parties, I conclude that the motion should be granted in part and denied in part.

This is an employment discrimination case involving alleged violations of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e to 2000e–17, and the Nebraska Fair Employment Practice Act (NFEPA), Neb.Rev.Stat. §§ 48–1101 to 48–1125. The plaintiff, Joy Sidak, alleges that she was subjected to sexual harassment by her supervisor, and that she was constructively discharged. The defendant, Pinnacle Telemarketing Ltd., argues that Sidak cannot establish a prima facie case of discrimination, and that her state-law claim is not actionable.

Although I find this to be a marginal case, there is sufficient evidence of a hostile work environment to require the submission of Sidak's sexual harassment claim to a jury. Pinnacle is mistaken in arguing that the burden is upon the plaintiff to establish that the defendant knew or should have known of the harassment and failed to take prompt remedial action. I agree with Pinnacle, however, that there is not sufficient evidence to support a finding that Sidak was constructively discharged. To the contrary, the evidence conclusively establishes that she did not give her employer a reasonable opportunity to work out the problem before quitting.

2. The defendant has filed a copy of the plaintiff's deposition testimony and copies of documents that were filed with or issued by the Nebraska Equal Opportunity Commission (filing 29). The plaintiff has not filed any evidence.

With respect to Sidak's state-law claim, I find that she has not precluded herself from bringing suit by filing a discrimination charge with the Nebraska Equal Opportunity Commission or by requesting the NEOC to dismiss its administrative proceedings after a "reasonable cause" determination was made. The state-law claim is, in any event, identical to the federal claim.

## I. BACKGROUND

Sidak was employed by Pinnacle as a "telephone service representative" for seven working days between May 10 and May 27, 1999. She was approximately three months pregnant at the time. Sidak alleges that her supervisor, Jimmy Colvard, repeatedly referred to her as "Prego" or "Hot Mama" in front of the other employees and inappropriately touched her on three occasions by playing with her hair, resting his chin on her shoulder while leaning over her chair, and putting his arms around her while assisting with a computer keyboard entry. Sidak also states that Colvard ridiculed her frequent need to use the restroom because of her pregnancy, and once denied her permission to leave her workstation to use the restroom. He also allegedly stated that he would like to accompany her to her next doctor's appointment to watch an ultrasound procedure. Sidak quit the job after Colvard allegedly refused to let her leave her workstation to complain to the facility manager, Tim Eckerman, about the alleged harassment.[3]

Sidak returned to Pinnacle two days later to pick up her check. Eckerman immediately apologized and allegedly stated that he "knew what was going on" and had been "trying to get rid of Jimmy for at least two weeks." Eckerman then informed Sidak that Colvard was terminated and offered Sidak a supervisor's position with an increase in pay. Sidak declined the employment offer, stating that she did not feel "comfortable" returning to work at Pinnacle. Sidak additionally states that she was embarrassed and was concerned because Colvard and Eckerman were friends, and because Colvard's brother was the other supervisor.

Sidak filed a discrimination charge with the NEOC (as a joint filing with the United States Equal Employment Opportunity Commission) on October 18, 1999. The NEOC issued a determination on July 17, 2000, finding "sufficient evidence to support a reasonable cause finding that discrimination has occurred as alleged," and proposed a conciliation agreement. On October 20, 2000, however, the NEOC administratively closed its file in response to a notification from Sidak's attorney that a right-to-sue notice was being requested from the EEOC. The right-to-sue notice was issued on March 26, 2001, and suit was filed in this court on April 25, 2001.

## II. DISCUSSION

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir.1994). It is not the court's

---

**3.** Sidak also states that Colvard promoted a male employee to be assistant floor manager even though she had more sales, which was the previously-announced criterion for the promotion. Sidak attempted to assert a disparate treatment claim at the final pretrial conference based on this adverse employment action, but the magistrate judge sustained Pinnacle's objection that the claim was not pleaded in the complaint. No appeal was taken from this ruling.

function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.,* 186 F.3d 1099, 1101 (8th Cir.1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.,* 127 F.3d 649, 652 (8th Cir.1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with " 'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.' " *Moody v. St. Charles County,* 23 F.3d 1410, 1412 (8th Cir.1994) (quoting *Gregory v. City of Rogers,* 974 F.2d 1006, 1010 (8th Cir.1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The

moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rule 56(e) provides that, when a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

### A. Hostile Work Environment

 To establish a submissible case of sex discrimination, Sidak must produce evidence that would allow a reasonable jury to conclude that she was a member of a protected group, that she was subjected to unwelcome sexual harassment, that the harassment was based on sex, and that the harassment affected a term, condition, or privilege of her employment.[4] *Beard v. Flying J, Inc.,* 266 F.3d 792, 797–98 (8th Cir.2001). Title VII makes actionable only conduct that is "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Id.* at 798 (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S.

---

4. The essential elements of Sidak's state-law claim are the same as her federal claim. The NFEPA is patterned after Title VII, and Nebraska courts look to federal decisions when construing the Act. *See Father Flanagan's Boys' Home v. Agnew,* 256 Neb. 394, 401, 590 N.W.2d 688, 693 (1999); *City of Fort Calhoun v. Collins,* 243 Neb. 528, 532, 500 N.W.2d 822, 825 (1993); *Airport Inn v. Nebraska Equal Opportunity Comm.,* 217 Neb. 852, 856, 353 N.W.2d 727, 731 (1984); *Malone v. Eaton Corp.,* 187 F.3d 960, 962 n. 3 (8th Cir.1999).

17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

▮ A reasonable jury could conclude that Colvard's alleged harassing conduct was gender-based and unwelcome. Sidak testified that she complained to Colvard numerous times about the name-calling, and also told him to stop touching her. The supervisor's conduct might also be classified as objectively hostile or abusive, and there is ample evidence that Sidak considered it to be such—enough so that she quit her job. "Once there is evidence of improper conduct and subjective offense, the determination of whether the conduct rose to the level of abuse is largely in the hands of the jury." *Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840 (8th Cir.1998).

▮ Contrary to Pinnacle's principal argument in support of its motion, it is not incumbent upon a plaintiff who has been harassed by a supervisor to prove that the employer knew or should have known of the harassment. The employer may be held vicariously liable in this instance. *See Jackson v. Arkansas Dept. of Educ.*, 272 F.3d 1020, 1025 (8th Cir.2001). An employer, however, may establish an affirmative defense to a sexual harassment claim if it can show, among other things, that it exercised reasonable care to prevent sexual harassment and promptly corrected any harassment that did occur. *Beard*, 266 F.3d at 799 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

▮ In this case, even though Sidak might be faulted for failing to report the incidents to the facility manager, as provided in Pinnacle's posted anti-harassment policy, it has not been demonstrated that reasonable care was exercised by Pinnacle to prevent the harassment. In fact, according to Sidak, the facility manager admitted to her that he was aware of the supervisor's behavior and had been trying to get rid of him for at least two weeks before Sidak quit her job.

### B. Constructive Discharge

▮ A plaintiff must show more than just a Title VII violation by her employer in order to prove that she has been constructively discharged. *Howard*, 149 F.3d at 841.

To constitute a constructive discharge, the employer must deliberately create intolerable working conditions with the intention of forcing the employee to quit and the employee must quit. The plaintiff can satisfy the intent requirement by demonstrating that she quit as a reasonably foreseeable consequence of the employer's discriminatory actions.

A constructive discharge arises only when a reasonable person would find the conditions of employment intolerable.

*Id.* (quoting *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir.1996)).

▮ Regardless of whether Colvard's alleged conduct was sufficiently offensive to be classified as "intolerable," it is clear that Sidak did not act reasonably when she walked off the job without first speaking to Eckerman, the facility manager.[5] Sidak acknowledges that she knew of Pinnacle's written anti-harassment policy, which directed employees to contact the facility manager or any other member of manage-

---

**5.** The intolerability of working conditions is judged by an objective standard, not the employee's subjective feelings; the question is whether working conditions were rendered so objectionable that a reasonable person would have deemed resignation the only plausible alternative. *Tatom v. Georgia–Pacific Corp.*, 228 F.3d 926, 932 (8th Cir.2000) (citing *Spears v. Missouri Dep't of Corrections & Human Resources*, 210 F.3d 850, 854–55 (8th Cir.2000); *Allen v. Bridgestone/Firestone, Inc.*, 81 F.3d 793, 796 (8th Cir.1996)).

ment to report sexual harassment by a supervisor, but admits that she did not talk to Eckerman until two days after she quit. Eckerman's office was located about ten feet from Sidak's workstation, and while she states that Eckerman either was not in his office or was on the telephone anytime she wanted to talk to him, he was available when she quit—Sidak, in fact, states that her decision to quit was motivated by Colvard's refusal to permit her leave her workstation to talk to Eckerman, whom she could see was in his office. Instead of going to see Eckerman, however, Sidak "walked out and went straight to [her] lawyer." (Sidak deposition, at 91:17–18.)

Furthermore, when Sidak returned two days later to pick up her check, she was informed by Eckerman that Colvard was terminated and that she could return to work. He even offered to promote her to supervisor and to increase her pay. This evidence affirmatively demonstrates that recourse was available to Sidak within the company if only she had chosen to avail herself of it.

■■■ "If an employee quits without giving her employer a reasonable chance to work out a problem, then she has not been constructively discharged." *Id.* at 492 (quoting *Coffman v. Tracker Marine, L.P.*, 141 F.3d 1241, 1247 (8th Cir.1998)). *See also Knowles v. Citicorp Mortgage, Inc.*, 142 F.3d 1082, 1086 (8th Cir.1998) (affirming summary judgment for employer on constructive discharge claim because employee did not pursue internal grievance procedure).

**C. State–Law Claim**

The only provision for filing suit under the NFEPA is Neb.Rev.Stat. Ann. § 48–1119(4) (Michie 1995), which permits a complainant "at any stage of the [administrative] proceedings prior to dismissal" to "file an action directly in the district court of the county where such alleged violation occurred." Pinnacle argues that because Sidak's discrimination charge was dismissed by the NEOC at her instance, she is precluded from filing suit under the Act.[6] Sidak, on the other hand, argues that only an involuntary dismissal (*i.e.*, a dismissal based upon a finding "that there is not reasonable cause to believe that the charge is true," *see* Neb.Rev.Stat. Ann. § 48–1118(1) (Michie 1995)), will bar suit.

This court has held that section 48–1119(4) permits actions only in state district court and does not allow a plaintiff to pursue a NFEPA claim in federal court solely under the provisions in the NFEPA itself. *Fritz v. Wal–Mart Stores, Inc.*, 158 F.Supp.2d 991, 1000 (D.Neb.2001) (citing *Lampman v. McCook Public Schools*, 54 F.Supp.2d 945, 946 (D.Neb.1999)). However, assuming that other jurisdictional requirements are satisfied, suit may be brought in federal court under Neb.Rev. Stat. § 20–148(1) (Lexis 1999),[7] which provides:

> Any person or company, as defined in section 49–801, except any political subdivision, who subjects or causes to be subjected any citizen of this state or other person within the jurisdiction

---

**6.** Receipt of a right-to-sue notice from the EEOC [pursuant to 42 U.S.C. § 2000e–5(f)(1)] is a condition precedent to a filing of a Title VII claim, curable after the action has commenced. *Jones v. American State Bank*, 857 F.2d 494, 499 (8th Cir.1988). Section 48–1119(4), by contrast, allows the complainant to give notice to the NEOC that an action has been filed in state district court, and thereby

terminate all proceedings before the commission. In this case, Sidak did not give notice under section 48–1119(4), but instead informed the NEOC that she would be requesting a right-to-sue notice from the EEOC.

**7.** Sidak's complaint and the final pretrial conference order both reference section 20–148 in addition to provisions of the NFEPA.

thereof to the deprivation of any rights, privileges, or immunities secured by the United States Constitution or the Constitution and laws of the State of Nebraska, shall be liable to such injured person in a civil action or other proper proceeding for redress brought by such injured person.

■ This statute allows a plaintiff to bring an action "to enforce the rights secured by the NFEPA without first exhausting the administrative remedies prescribed by the Act." *Parrish v. Immanuel Medical Center,* 92 F.3d 727, 734 (8th Cir. 1996) (plaintiff properly elected to bring immediate cause of action in federal district court for disability discrimination under the NFEPA pursuant to section 20–148 without first exhausting administrative remedies); *Goolsby v. Anderson,* 250 Neb. 306, 313, 549 N.W.2d 153, 158 (1996) (section 20–148 is procedural statute enacted to allow plaintiffs seeking to vindicate already-existing constitutional or statutory rights to avoid review procedures of agencies like NEOC; in accordance with section 20–148, plaintiff properly brought sexual harassment and retaliation claims under NFEPA in state district court without first exhausting administrative remedies under NFEPA).

This court has also assumed, without deciding, that a plaintiff may bring an action under section 20–148 even after the NEOC has dismissed an administrative charge. *See Fritz, supra* (noting that issue was unclear, but also immaterial since result on the merits was the same under both state and federal law). If this assumption is correct, then there is no need to determine in this case whether there was a "dismissal" within the meaning of section 48–1119(4). The deciding point, in other words, is a determination that any procedural limitations which may exist for bringing suit under section 48–1119(4) are not incorporated into section 20–148.[8]

■ Section 20–148 provides "an alternative method for pursuing civil rights claims that are defined elsewhere in constitutional or statutory law." *Goolsby,* 250 Neb. at 313, 549 N.W.2d at 158. *See also Dossett v. First State Bank,* 261 Neb. 959, 966, 627 N.W.2d 131, 137 (2001). While the substantive provisions of the NFEPA will provide a basis for bringing a civil rights action under section 20–148, there is no indication in the statute that any NFEPA procedures are applicable. Indeed, the very purpose of the Nebraska Legislature in enacting section 20–148 was to allow "plaintiffs seeking to vindicate rights already existing under constitutional or statutory law [to] avoid the review procedures of agencies like NEOC." *Goolsby, supra.* *Cf. Adkins v. Burlington Northern Santa Fe R. Co.,* 260 Neb. 156, 163, 615 N.W.2d 469, 474 (2000) (applying NFEPA's 300-day limitations period, *see* Neb.Rev.Stat. § 48–1118(2) (Michie 1995), to action filed under section 20–148, but noting that such ruling was consistent with *Goolsby* because using the same statute of limitations "avoids using § 20–148 to inadvertently create expanded rights (other than an alternative civil avenue of recovery) not present in an administrative [NFEPA] claim.").[9]

---

8. Although Pinnacle's interpretation of section 48–1119(4) appears to me to be unreasonable, I am reluctant to engage in further construction of a statute which I have held does not permit the filing of suit in federal court.

9. Sidak's claim appears to be time-barred under the Nebraska Supreme Court's holding in *Adkins.* Even if the statute of limitations were tolled while charges were pending before the NEOC (an issue that I do not decide), a total of 330 days elapsed between the date that Sidak quit work and the date that she filed suit. Although Pinnacle generally pleaded a statute of limitations defense in its answer, the defense was not preserved in the final pretrial conference order. I therefore

■ Thus, as I read the statute, a complainant before the NEOC may maintain an action under section 20–148 unless and until such time as an appealable order is entered by the commission pursuant to Neb.Rev.Stat. Ann. § 48–1119(3) (Michie 1995).[10] That being the case, Sidak's state-law claim may proceed.

## CONCLUSION

Sidak has established a prima facie case of sexual harassment under state and federal law. She, however, cannot prove that she was constructively discharged by Pinnacle. Finally, Sidak's state-law claim, which is identical to her Title VII claim, is not barred by the NEOC's administrative dismissal of her discrimination charge.

Accordingly,

IT IS ORDERED that the defendant's motion for summary judgment (filing 28) is granted in part and denied in part, as follows:

1. Insofar as the plaintiff claims that she was constructively discharged, the motion is granted and such claim is dismissed; and

2. In all other respects, the motion is denied.

treat it as waived. *See* Fed.R.Civ.P. 8(c); *United States v. Big D Enterprises, Inc.*, 184 F.3d 924, 935 (8th Cir.1999) ("A defense based upon the statute of limitations is generally waived if not raised in a responsive pleading."), *cert. denied*, 529 U.S. 1018, 120 S.Ct. 1419, 146 L.Ed.2d 311 (2000).

**10.** Section 48–1119(3) requires the commission, following an administrative hearing, to "make and file its findings of fact and conclusions of law and make and enter an appropri-

ate order." It is likely that such an order would bar an action brought under section 20–148. *See, e.g., Scott v. Mattingly,* 241 Neb. 276, 488 N.W.2d 349 (1992) (applicant for nursing license was precluded from bringing civil rights action where issues were resolved by administrative hearing). Unreviewed state administrative proceedings do not have preclusive effect on Title VII claims, however. *See University of Tennessee v. Elliott,* 478 U.S. 788, 796, 106 S.Ct. 3220, 3225, 92 L.Ed.2d 635 (1986).