**Travis J. ADAMS, Plaintiff,**

v.

**TENNECO AUTOMOTIVE OPERATING COMPANY, INC., a Delaware Corporation licensed to do business in Nebraska, Defendants.**

**No. 4:04 CV 3208.**

United States District Court, D. Nebraska.

Feb. 25, 2005.

Joy A. Shiffermiller, Shiffermiller Law Firm, Lincoln, NE, for Plaintiff.

Timothy R. Engler, Harding, Shultz Law Firm, Lincoln, NE, for Defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This employment discrimination case is brought under Nebraska law only. The citizenship of the parties is diverse. The plaintiff, Travis J. Adams, claims that while working for the defendant, Tenneco Automotive Operating Company, Inc., he was discriminated against because of his marital status. In particular, Tenneco allegedly discriminated against Adams because he was having marital problems, he was going through a divorce, and he ultimately obtained a divorce. The plaintiff also claims that his employer retaliated against him for filing a claim of marital status discrimination with the Nebraska Equal Opportunity Commission (NEOC).

The case raises interesting questions about (1) the meaning of "marital status" discrimination under the Nebraska Fair Employment Practice Act (NFEPA) and (2) application of the statute of limitations where a claimant has filed a charge with the NEOC regarding a discrete, substantive claim of discrimination, but has not filed a charge regarding subsequent retaliation.

I will deny the motion because there may be material facts in dispute regarding the "marital status" discrimination claim and the retaliation claim. More to the point, and to be truthful, I am not sure

what facts are "material" given the ambiguity of Nebraska law (discussed below). I thus prefer to decide the legal issues as part of the trial process in this case.

Because this is an unusual case, I also add several comments that hopefully will help the lawyers prepare for trial. They pertain to the "marital status" discrimination claim and the retaliation claim.

### "Marital Status" Discrimination

So far as I can tell from the briefs, there is no law in Nebraska—save for a statutory definition (cited below)—which gives practical meaning to "marital status" discrimination. Still further, I am not at all sure that one can properly analogize to federal law for this type of claim when federal law does not recognize "marital status" discrimination. With the foregoing in mind, I recite the pertinent statutes as a context for the questions I next pose.

Neb.Rev.Stat. Ann. § 48–1104 (Lexis 2002) states:

It shall be an unlawful employment practice for an employer:

(1) To fail or refuse to hire, to discharge, or to harass any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, disability, marital status, or national origin; or

(2) To limit, advertise, solicit, segregate, or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect such individual's status as an employee, because of such individual's race, color, religion, sex, disability, marital status, or national origin.

Another statute defines "marital status." Neb.Rev.Stat. Ann. § 48–1102(12) (Lexis Cum.Supp.2004). It states: "Marital status shall mean the status of a person whether married or single." *Id.*

As illustrations of the difficulty of trying this case, given the uncertain state of the law, let me provide five practical examples [1] of the problems we might encounter at trial:

1. Given the fact that "marital status" is ubiquitous, that is, everyone is either married or not, and given the fact that martial status can be changed, should the claim fail at the end of the plaintiff's case in chief if there is no direct evidence of discrimination? In other words, why would one use the burden shifting framework for types of discrimination where the protected characteristic cannot be changed (such as race), in a case where the protected attribute (marital status) is shared by everyone and can be changed at will?

2. If the case gets to the jury, must the plaintiff prove that the "marital status" discrimination was the sole factor in the adverse employment decision, or only a motivating factor?

3. Is a person going through, but who has not yet completed, a divorce properly considered "married" or "single" for purposes of a "marital status" discrimination claim? Or, as the plaintiff asserts, do the statutes make those who are either "separated" or "divorced" a protected class?

4. What are the boundaries of the business judgment rule in "marital status" discrimination cases? For example, is proof that an employee is prohibited from socializing with a coworker relevant evidence of "mar-

---

1. This list is not intended to be exhaustive, but, rather, is intended to spark a renewed effort on the part of the lawyers to think through their case.

ital status" discrimination, particularly if that prohibition is imposed in a small, rural town? Or, is proof that a manager dislikes employees who are divorced relevant evidence of "marital status" discrimination? Or, what is the relevance of statistics regarding the number of employees who are married or single to a "marital status" discrimination claim, particularly where the alleged discrimination takes place in the hinterlands? [2]

5. Has a person who claims "marital status" discrimination suffered an "adverse employment action" if, as a condition of employment, he or she is prohibited or discouraged from socializing with a coworker who is of the same or different marital status? [3]

### The Retaliation Claim

A word about the retaliation claim and the statute of limitations is also in order. I believe the defendant misunderstands the law on the retaliation claim, and that misunderstanding has caused the parties to discuss the wrong issue on the summary judgment motion.[4] That is, the issue regarding the retaliation claim is not whether the plaintiff failed to exhaust administrative remedies.

Under Nebraska law, one may file a charge of discrimination (which may include a charge of retaliation) with the NEOC, or one may file suit without ever dealing with the NEOC. It is important to distinguish between the two alternatives. The importance of that distinction can be lost, particularly where, as here, the plaintiff has submitted an earlier discrete, substantive discrimination claim to the NEOC, but has also filed suit directly on a retaliation claim that has never been provided to the NEOC.

If one files a claim with the NEOC, one must do so within 300 days of the act of discrimination. Neb.Rev.Stat. Ann. § 48–1118(2) (Lexis 2002) ("A written charge of violation of the [NFEPA] shall be filed within three hundred days after the occurrence of the alleged unlawful employment practice....") If the claim is timely submitted to the NEOC (i.e., within 300 days of the alleged discrimination), there is no other statute of limitations running against that claim while it is in the hands of the NEOC. After the NEOC has given notice of the last action that it will take on the claim, one has 90 days to file suit. Neb. Rev.Stat. Ann. § 48–1120.01 (Lexis Cum. Supp.2004).[5]

On the other hand, if an aggrieved person does not want to use Nebraska's administrative process at all for a particular

---

**2.** Having lived for many years in Dawson County, the locus of this dispute, my comment is not pejorative.

**3.** Note that § 48–1104(2) prohibits an employer from "limit[ing]" or "classify[ing]" an employee "in any way" which would "adversely affect such individual's status as an employee...."

**4.** Because I, too, have been confused by Nebraska law on this and related points, I cannot fairly fault counsel.

**5.** That statute states:

The deadline for filing an action directly in the district court is ninety days after the complainant receives notice of the last action the commission will take on the complaint or charge. When entering the last action on the complaint or charge, the commission shall issue written notice of such ninety-day deadline to the complainant by certified mail, return receipt requested. The last action on the complaint or charge includes the issuance of the final order after hearing, the determination of reasonable cause or no reasonable cause, and any other administrative action which ends the commission's involvement with the complaint or charge.

NFEPA claim, one can file suit without first proceeding to submit a claim to the NEOC. *Goolsby v. Anderson*, 250 Neb. 306, 549 N.W.2d 153, 157 (1996) (comparing Neb.Rev.Stat. § 20–148 and Neb.Rev. Stat. § 48–1101, et seq., and holding that under the statute providing persons with private cause of action for deprivation of constitutional and statutory rights, employee could bring private cause of action against employer for violations of Fair Employment Practice Act resulting from sexual harassment in workplace, even though employee had not exhausted administrative remedies available under the Act.). *See also Parrish v. Immanuel Medical Center*, 92 F.3d 727, 734 (8th Cir. 1996) (applying Nebraska law and holding that NFEPA claim could be brought without first exhausting administrative remedies).[6] If one does not file a claim with the NEOC, one has 300 days after the wrongful act to bring suit. *Adkins v. Burlington Northern*, 260 Neb. 156, 615 N.W.2d 469, 473 (2000) (for NFEPA claims brought pursuant to Neb.Rev.Stat. § 20–148 (and thus not submitted to the NEOC), Neb. Rev.Stat. § 48–1118(2) nevertheless provides the applicable statute of limitations, and that is "within 300 days after the occurrence of the alleged unlawful employment practice.").

Here Adams filed his claim for marital status discrimination with the NEOC on July 24, 2003, a right to sue letter was issued on March 1, 2004, and he filed suit for the marital status discrimination on June 1, 2004, within 90 days after receiving the NEOC notice. Tenneco does not dispute that such filing was timely. However, regarding the retaliation claim, Adams waited 301 days after the date Tenneco was first made aware of the NEOC complaint of marital status discrimination (August 5, 2003[7]) to file suit. The dates that the specific acts of retaliation are alleged to have taken place—presumably sometime between August 5, 2003 and June 1, 2004—are not clear, and the nature of the alleged retaliation is equally vague.[8] That said, the retaliation obviously could not have occurred earlier than the date the defendant first learned of the marital status complaint to the NEOC on August 5, 2003. So, at trial, it will be necessary to decide when the specific acts of retaliation took place, and, measured against that date, a determination must be made whether suit was filed within the 300–day limitation period. The parties should be prepared to address that issue in their trial briefs and otherwise.

Accordingly,

6. It is important to distinguish between cases where the plaintiff does proceed to file a claim with the NEOC, and then sues on that claim, from cases where (as in the retaliation claim in this case) the claim has never been submitted to the NEOC. If a party proceeds to file a claim with the NEOC and then tries to sue *after* the NEOC has *dismissed* the claim, the suit comes too late. *See, e.g., Metz v. ACI Worldwide, Inc.*, 2002 WL 2005719, (D.Neb. 2002) (No. 8:02–CV–60) (granting motion to dismiss "because plaintiff failed to file her NFEPA claim in federal court prior to dismissal by the NEOC."). In order to avoid catching such claimants unaware of this bar, Neb.Rev.Stat. Ann. § 48–1120.01 (Lexis Cum. Supp.2004), effective August 31, 2003, requires the NEOC to give the 90–day notice.

7. This date was derived from the transcription of a tape recorded NEOC interview with the plaintiff. (Filing 28, Affidavit of Trish Bell and Ex. 1 at 17.)

8. There are two dates ("in or about August of 2003" and "in or about January 2004") set forth in the plaintiff's brief, but those dates are not backed up by citations to the record and the nature of the alleged retaliatory action is only vaguely described. (Filing 25 at 27.) Through no fault of Judge Piester, the pretrial conference order (filing 30) is nearly worthless on this issue. In short, the plaintiff has not sufficiently indicated precisely what the specific acts of retaliation are and when they took place. It will be very important for the plaintiff to do so at trial.

IT IS ORDERED that the defendant's motion for summary judgment (filing 21) is denied.